PATRICK J. FLEMING, Plaintiff-Appellee, *v.* STATE BOARD OF ELECTIONS, Defendant.—(KENNETH J. JUEN, Defendant-Appellant.)

Fourth District No. 13838

Opinion filed July 29, 1976.

696

Freeark & Harvey, of Belleville (Ted Harvey, Jr., and James R. Mendillo, of counsel), for appellant.

Thomas F. Londrigan, of Londrigan and Potter, P. C., of Springfield, for appellee.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

Plaintiff-appellee Patrick J. Fleming brought an action for declaratory judgment and injunctive relief. He sought to prohibit the State Board of Elections (which did not appear in this court) from certifying defendant-appellant, Kenneth J. Juen, as the Republican candidate for the office of circuit court judge in St. Clair County. The trial court found for plaintiff and defendant Juen appeals.

The parties agree as to the facts, which are as follows: In the March 1976 primary election the names of plaintiff, defendant and a third individual, Sprague, were on the Democratic primary ballot for the judicial office in question. Sprague was not made a party in this litigation. Both plaintiff and defendant had filed, in apt time, the necessary petitions and nominating documents with the State Board of Elections. There were no names on the Republican ballot for the judicial office. A Republican ballot for the office was prepared, however, pursuant to a 1972 opinion of the Attorney General. (Opinion S-401, February 2, 1972.) This opinion stated that where there is more than one name on the ballot of one political party for a particular office, a ballot should be prepared for the other political party, even though it has no names on it, in order that the voters be afforded the opportunity to write in a name as provided in section 7—12 of the Election Code (Ill. Rev. Stat. 1975, ch. 46, par. 7—12).

The report sheet for the canvass of the primary election received by the State Board of Elections showed that the results of the Democratic primary in St. Clair County for the office of circuit judge were as follows:

Fleming    -    14,433
Sprague    -    13,873
Juen       -     2,297

The report sheet also showed that Juen also received 22 write-in votes in the Republican primary for the same office. No other person received more than 22 votes in the Republican primary for the office. Section 7—58 of the Election Code (Ill. Rev. Stat. 1975, ch. 46, par. 7—58) requires the State Board of Elections to proclaim the official results of the primary results, and to file certificates of nomination with the county clerk in order that ballots for the general election may be prepared.

The parties have stipulated that Juen filed a petition for nomination and

a statement of candidacy to have his name placed on the Democratic primary ballot, and that he never withdrew his name from the Democratic ballot. It was further stipulated that Juen asked for and received a Republican ballot in the March 1976 primary, that he voted that Republican ballot.

The sole question presented by this appeal may be stated as follows: "Is an individual who is on one party's ballot for the office of circuit judge in a primary election, eligible to be written-in by the voters of another party as their candidate for the same position?" The answer to that question is "No."

Defendant cites three cases which have dealt with various sections of the Election Code of this State (Ill. Rev. Stat. 1971, ch. 46, par. 7—1 *et seq.*). *Kusper v. Pontikes,* 414 U.S. 51, 38 L. Ed. 2d 260, 94 S. Ct. 303 (1973), involved the provisions of section 7—43(d) of the Election Code (Ill. Rev. Stat. 1973, ch. 46, par. 7—43(d)) which provided that no person was entitled to vote at a primary of another political party. In *Kusper* a voter who had voted in the February 1971 Republican primary desired to vote in the March 1972 Democratic primary but was prevented from doing so by the above cited provisions of the statute. The court held that section 7—43(d) unconstitutionally restricted the freedom of the voters of this State to change party affiliation in that they were locked into their previous party affiliation for a period of 23 months and were, as a consequence, unable to participate in the primary of choice during that period of time.

In *Sperling v. County Officers Electoral Board,* 57 Ill. 2d 81, 309 N.E.2d 589 (1974), the court considered the impact of *Kusper* upon certain portions of the Illinois Election Code (Ill. Rev. Stat. 1971, ch. 46, par. 7—1 *et seq.*). The court specifically considered the restrictions contained in section 7—10 as they apply to eligibility to sign nominating petitions and to be a candidate for nomination. The *Sperling* opinion quotes the relevant portion of section 7—10 under consideration as follows: "For the purpose of determining eligibility to sign a petition for nomination or eligibility to be a candidate under this article, a 'qualified primary elector' of a party (1) is an elector who has not requested a primary ballot of any other party at a primary election held within 2 years of the date on which the petition must be filed * * *." The court then went on to say: "Section 7—10 also provides that a candidate for nomination must swear that he is a 'qualified primary voter' of the party to which the petition for candidacy relates. The language of section 7—43(d), ruled invalid in *Kusper,* relating to voters, and the language of section 7—10, relating to signers of nominating petitions, speak in terms of 'qualified primary elector' while the language of section 7—10 as to candidates speaks in terms of 'qualified primary voter.' While we note this disparity, it is our

opinion that within the context in which the phrases appear, the disparity is not significant and the phrases have the same meaning." 57 Ill. 2d 81, 83, 309 N.E.2d 589, 590-91.

The court determined that the rationale of *Kusper* was applicable to those provisions of section 7—10 insofar as it imposed a 2-year restriction upon voters who desired to sign primary nominating petitions and consequently held the restriction to be invalid. As to the question presented by the 2-year restriction upon changes of party by those who are candidates in primary elections, the court observed that "We believe that the standards governing party changes by candidates may and should be more restrictive than those relating to voters generally. It seems clear to us that the State's interest in preserving the integrity of the political process will support a reasonable restriction upon party-switching by candidates, * * *." The court concluded, however, that since the statute provided "substantially similar" restrictions for all three categories (*i.e.,* voters, voters who sign primary nominating petitions, and voters who wish to be candidates), the constitutional validity of the restriction on candidates was not severable from the balance of the legislative scheme and consequently fell with the other portions.

In *Dooley v. McGillicudy*, 63 Ill. 2d 54, 345 N.E.2d 102 (1976), additional restrictions contained in section 7—10 of the Election Code were considered. The precise question was whether the failure of nominating petitions to set forth that the signers were "qualified primary electors" and "members of and affiliated with" the political party in which the nominee sought candidacy prevented that nominee from being placed on the ballot. The court held that "the result in *Kusper* and *Sperling* and the absence of curative legislation was to render inoperable those restrictions upon candidates in a party primary and voters who signed primary petitions concerning those individuals' prior political affiliations."

Defendant Juen argues that the statutory scheme has been completely shaken by the decisions in *Kusper, Sperling* and *Dooley* to the point that there is a substantial question as to whether *any restriction* on voters or candidates as to party affiliation can withstand challenge. He develops this thesis by arguing that at the time of the March 1976 primary Juen was entitled to ask for and receive a Republican primary ballot despite the fact that he was a candidate on the Democratic primary ballot since, under the foregoing decisions, there are no party restrictions on a voter. He argues that it is "* * * also clear that any person taking a primary ballot is entitled to write in the name 'of *any other person affiliated* with such party as a candidate for the nomination of any office * * *'," and that the critical question then is how does one become "affiliated" with a party for the purposes of section 7—46 of the Election Code in which the

language appears. This technical back door to candidacy in both the Republican and Democratic parties, in the same election and for the same office, is not sufficiently ajar to accommodate defendant's passage. It is true that the word "affiliated" is not defined in the statute. Section 7—44 requires that the voter who desires to vote in a primary is required to state his party affiliation to the primary judges, together with his name and place of residence in order to secure a ballot. What defendant's argument overlooks, however, is that this has become (under *Sperling*) a meaningless rite. The word "affiliation", however, retains crucial significance in section 7—46 since it is the determinative factor in assessing for whom the voter may cast his primary ballot.

Under the provisions of section 7—10, defendant Juen was required, and did, file a sworn statement of candidacy as a condition to having his name appear on the Democratic primary ballot for the office of circuit judge. The statement of candidacy is required to be on a form, prescribed by the statute in substantially the following language:

| NAME | ADDRESS | OFFICE | DISTRICT | PARTY |
|------|---------|--------|----------|-------|
|      |         |        |          |       |

The oath affixed to the Statement contains statements that the candidate is a "qualified voter of the _____ party" and a request that his name be printed on the primary ballot of the candidate's party of choice. Defendant argues that his act of affiliation (done in order that he be eligible to be voted for under section 7—46) consisted of declaring party affiliation and receiving a Republican ballot in the March, 1976, primary. We have already observed that this is presently an empty ritual insofar as eligibility to vote is concerned.

We hold that the words "party affiliation" contained in section 7—46 mean exactly what any individual possessed of ordinary discernment would take them to mean. It is difficult to imagine a more definite, explicit statement of party affiliation (short of wearing a sandwich board proclaiming the fact) than to secure the placement of one's name on the primary ballot of a political party as a candidate of that party in an election. We hold that when Juen became a candidate of the Democratic party he became, for purposes of definition under section 7—46, "affiliated" with the Democratic party in the March 1976 primary, and that this "affiliation" for said primary could only have been changed by

the withdrawal of his name as a candidate of the Democratic party as provided in section 7—12(9) of the Election Code. His oral statement to the primary judges did not establish party affiliation with the Republican party so as to render him eligible as a write-in candidate under the provisions of section 7—46.

We deem this holding to be entirely consistent with the clear intent of the legislature. Section 7—12 of the Election Code provides "* * * If petitions for nomination have been filed for the same person with respect to more than one political party, his name shall not be certified nor printed on the primary ballot of any party." Section 7—10 provides in pertinent part that "* * * but no such person may sign petitions for or be a candidate in the primary of more than one party." In view of the provisions of section 7—12 it appears that the last above quoted restriction contained in section 7—10 is severable and remains unimpaired by the invalidity of other restrictive conditions contained in that section. The legislative intent demonstrates a legitimate interest in the preservation of the political process, which it sought to advance by prohibiting an individual from being an eligible candidate of more than one political party for the same office in the same primary election.

Judgment affirmed.

TRAPP, P. J., and CRAVEN, J., concur.