(No. 46471.—

JACK I. SPERLING, Appellee, v. THE COUNTY OFFI-
CERS ELECTORAL BOARD *et al.*, Appellants.

*Opinion filed March 29, 1974.*

Franklin S. Schwerin and Martin J. Oberman, both of
Chicago, for appellant.

Bernard Carey, State's Attorney, William J. Harte, and
Winston and Strawn, all of Chicago, for appellee.

MR. CHIEF JUSTICE UNDERWOOD delivered the
opinion of the court:

The principal issue in this appeal concerns the impact
of *Kusper v. Pontikes,* —— U.S. ——, 38 L. Ed. 2d 260,
94 S. Ct. 303, upon the Illinois statutory restrictions
against changes in political party affiliation by voters (Ill.
Rev. Stat. 1971, ch. 46, par. 7—43(d)), by signers of
nominating petitions for primary elections and by candi-

dates for nomination in such primary elections. Public Act 78–331, par. 7–10.

Jack I. Sperling filed a petition for nomination as the Democratic candidate for the office of judge of the circuit court of Cook County in the March 19, 1974, primary election. A registered Democratic voter filed with the County Officers Electoral Board of Cook County objections to that nominating petition alleging candidate Sperling was ineligible under section 7–10 of the Election Code, as amended, to be a candidate in the Democratic Party primary because he had requested a Republican Party ballot and voted in the March 21, 1972, Republican primary election. The Electoral Board on January 4, 1974, sustained the objections and ordered that candidate Sperling's name not be printed on the primary ballot of the Democratic Party.

Candidate Sperling sought review of that decision, and on January 25, 1974, the circuit court of Cook County reversed the order of the Electoral Board and directed that his name be placed on the Democratic primary ballot.

We allowed a direct, expedited appeal to this court, heard oral argument on February 4 and announced at that time our judgment affirming the judgment of the Cook County circuit court for reasons to be stated in a subsequent opinion. This is that opinion.

While appellants have argued several issues here, it is necessary to discuss only the question whether the provisions of the Illinois Election Code defining the eligibility of a candidate of a political party for public office in terms of a 2-year "no-switch" rule survived *Kusper v. Pontikes.*

The statutory provisions restricting changes of political parties by voters in primary elections are found in article 7 of the Illinois Election Code, which deals with the making of nominations by political parties. (Ill. Rev. Stat. 1971, ch. 46, par. 7–1 *et seq.*) Section 7–43 provides in part: "No person shall be entitled to vote at a primary:

\*\*\* (d) If he has voted at a primary held under this Article 7 of another political party within a period of 23 calendar months next preceding the calendar month in which such primary is held \*\*\*." It is this restriction which was held constitutionally impermissible in *Kusper*.

Similar restrictions relating to the eligibility of voters to sign nominating petitions and to be candidates for nomination are found in Public Act 78—331 amending section 7—10 of the Code, which, in relevant part, reads: "For the purpose of determining eligibility to sign a petition for nomination or eligibility to be a candidate under this Article, a 'qualified primary elector' of a party (1) is an elector who has not requested a primary ballot of any other party at a primary election held within 2 years of the date on which the petition must be filed \*\*\*." Section 7—10 also provides that a candidate for nomination must swear that he is a "qualified primary voter" of the party to which the petition for candidacy relates. The language of section 7—43(d), ruled invalid in *Kusper*, relating to voters, and the language of section 7—10, relating to signers of nominating petitions, speak in terms of "qualified primary elector" while the language of section 7—10 as to candidates speaks in terms of "qualified primary voter." While we note this disparity, it is our opinion that within the context in which the phrases appear, the disparity is not significant and the phrases have the same meaning.

*Kusper* held that the effect of the 23-month prohibition in section 7—43 against voters changing political parties was to "lock" a voter into a pre-existing party affiliation from one primary to the next, and that the only way to break the "lock" was to forgo voting in any primary for a period of almost two years. (*Kusper v. Pontikes*, ——— U.S. ———, at ———, 38 L. Ed. 2d 260, at 267, 94 S. Ct. 303, at 308.) The court then held that section 7—43(d) was an unconstitutional infringement upon the right of free political association protected by

the first and fourteenth amendments. The same reasoning which moved the *Kusper* court to hold invalid the 23-month restriction upon voter changes of political parties is, it seems to us, applicable to the 2-year restriction upon those voters who wish to sign primary nominating petitions, and that restriction, too, must fall. This is not to say, of course, that *no* limitation may be placed upon the right of a voter, or those who sign primary petitions, to change political parties. Illustrative of permissible conditions upon the exercise of such right is the New York statute requiring voters who desire to change parties to declare their party allegiance 30 days before the general election preceding the primary election. In *Rosario v. Rockefeller*, 410 U.S. 752, 36 L. Ed. 2d 1, 93 S. Ct. 1245, the validity of that requirement was upheld against constitutional challenge. Clearly, the State does have a legitimate interest in curtailing "raiding" by members of opposing political parties, and preserving the integrity of the electoral process (*Kusper, Rosario*), and reasonable conditions tailored to that objective may be imposed upon the right to change political parties. But absolute prohibition of that change for a 2-year period is, equally clearly, invalid, and its vice as to voters generally inheres in its application to voters who sign primary petitions.

The crucial question, however, is the continuing viability of the 2-year restriction upon changes of party by those who are candidates in primary elections. If that limitation remains valid, it effectively precludes candidate Sperling from seeking nomination as the Democratic candidate, for it is undisputed that he requested and voted a Republican ballot in the March 21, 1972, primary election, a date well within the 2-year period prior to December 17, 1973, the final date for filing petitions for the 1974 primaries.

We believe that the standards governing party changes by candidates may and should be more restrictive than those relating to voters generally. It seems to us clear that

the State's interest in preserving the integrity of the political process will support a reasonable restriction upon party-switching by candidates, and the 2-year restriction in article 8 of the Election Code (Ill. Rev. Stat. 1971, ch. 46, par. 8—8) was upheld as it applied to candidates for the General Assembly in *Bendinger v. Ogilvie* (N.D. Ill. 1971), 335 F. Supp. 572. There a three-judge district court concluded that if there were no "24-month rule" the entire elective process would be subverted and thrown into chaos. Similarly, the Supreme Court, in *Lippitt v. Cipollone,* 404 U.S. 1032, 30 L. Ed. 2d 725, 92 S. Ct. 729, affirmed in a memorandum opinion the decision of a three-judge district court which upheld the constitutionality of a 4-year "no-switch" rule for candidates in Ohio. (See 337 F. Supp. 1405.) The basis of the lower court decision was that the State had a compelling interest in protecting the integrity of all political parties and membership therein. While these decisions predate *Kusper*, there is no indication in *Kusper* that restrictions upon party-switching by candidates would be invalid. *Kusper* specifically held only that a 23-month "no-switch" rule as to voters was invalid.

We note, too, the January 18, 1974, opinion of Judge Bauer in *Ament v. Kusper,* No. 74C133 (N.D. Ill.), denying a motion for preliminary injunction to restrain the printing of ballots without the names of two candidates for nomination for the office of Republican township committeeman who were held by the Cook County Officers Electoral Board to be disqualified because signers of nominating petitions for those candidates had voted in the March, 1972, Democratic Party primary. While appellants cite this opinion as holding contrary to our conclusion here, and Judge Bauer did find the prospects of plaintiffs' success on the merits in that suit were neither obvious nor certain, the principal thrust of the opinion was its application of the abstention doctrine and holding that the motion for injunction was premature in view of the

pendency in the Illinois courts of proceedings involving identical issues. Continued viability of portions of State statutes, other provisions of which have been held invalid, is ordinarily a question of State law and we view *Ament* as recognizing this as a factor in denying the preliminary injunction.

That the restriction on candidates could be upheld against constitutional challenge is, however, of little help here. Such restrictions and establishment of the periods of time involved are, within constitutional limitations, matters for legislative determination. We have here a legislatively designed plan for the preservation of the integrity of the political process which provided substantially similar restrictions for all three categories: voters, voters who sign primary nominating petitions, and voters who wish to be candidates. That plan has now been held constitutionally impermissible as to two of those categories. The legislature has had no real opportunity since *Kusper* was announced last November to respond, and we cannot say absence of action by it indicates acquiescence. Likewise, our decision in this case may well prompt legislative action. In short, it seems to us that the restrictive provisions upon the several categories of voters are so closely related that the General Assembly would not have enacted the portion relating to candidates apart from some restrictions upon voters generally and, more particularly, those voters who desire to sign primary petitions. (*People ex rel. Engle v. Kerner* 32 Ill.2d 212, 221, and cases there cited.) In these circumstances the restrictions upon candidates cannot be considered independent and severable from the invalid portions of the plan.

The judgment of the circuit court of Cook County is accordingly affirmed.

*Judgment affirmed.*