No. 2--08--0605          Filed:  8-7-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THOMAS CULLERTON, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 08--MR--802 |
| | ) | |
| DU PAGE COUNTY OFFICERS | ) | |
| ELECTORAL BOARD, CHARLOTTE | ) | |
| MUSHOW, J.P. "RICK" CARNEY, | ) | |
| JEANNE McNAMARA, and DONNA | ) | |
| M. ROZYCKI, | ) | Honorable |
| | ) | Paul M. Fullerton, |
| Respondents-Appellants. | ) | Judge, Presiding. |

JUSTICE O'MALLEY delivered the opinion of the court:

Respondents, Du Page County Officers Electoral Board (Board), Charlotte Mushow, J.P. "Rick" Carney, Jeanne McNamara, and Donna M. Rozycki, appeal from the decision of the circuit court reversing the decision of the Board to exclude petitioner, Thomas Cullerton, from the November 2008 ballot as the Democratic candidate for Senator of the 23rd Legislative District of Illinois.  On appeal, respondents assert that the circuit court erred and that the Board correctly excluded petitioner from the ballot, for two reasons.  First, respondents argue that the resolution nominating petitioner to fill the vacancy on the Democratic ballot was deficient for its failure to include on its face the date on which the Democratic 23rd Legislative District Committee (Committee) selected him as its nominee for the November 2008 general election.  See 10 ILCS 5/7--

61 (West 2006). Second, respondents argue that petitioner cannot run as a Democratic candidate in the general election because he voted in the Republican primary election and thus does not meet the statutory requirement that he be a "qualified primary voter" of the Democratic party. See 10 ILCS 5/7--10 (West 2006). Because we find the second argument dispositive, we confine our discussion to that issue. For the reasons that follow, we reverse the judgment of the circuit court and hold that petitioner is ineligible to be placed on the November 2008 ballot as the Democratic candidate for Senator of the 23rd Legislative District of Illinois.

The parties do not dispute the relevant underlying facts. In February 2008, petitioner voted in the Republican Party primary election in Du Page County, just as he had in 2004 and 2006. After the 2008 primary election, the Democratic Party had no candidate for Senator of the 23rd Legislative District. On April 1, petitioner filed a resolution from the Committee, nominating him as the candidate to fill the Democratic vacancy on the general election ballot. On that same day, petitioner filed a statement of candidacy stating that he was a "qualified primary voter of the Democratic Party." Rozycki filed objections to petitioner's candidacy, and the Board sustained the objections. Petitioner petitioned the circuit court for judicial review of the decision, and the circuit court thereafter reversed the Board's decision and ruled that petitioner's name could appear on the November 2008 general election ballot. The circuit court stayed enforcement of its order, pending this timely appeal.

The standards for review of an electoral board decision are essentially identical to those applicable to review of an administrative agency decision. Cinkus v. Village of Stickney Municipal Officers Electoral Board, 228 Ill. 2d 200, 209-10 (2008). An electoral board's findings of fact are deemed prima facie true and correct and will not be overturned on appeal unless they are against the manifest weight of the evidence. Cinkus, 228 Ill. 2d at 210. An electoral board's decisions on

questions of law, however, are not binding on a reviewing court, which will instead review such questions under the nondeferential de novo standard of review. Cinkus, 228 Ill. 2d at 210-11. An electoral board's rulings on mixed questions of law and fact--questions on which the historical facts are admitted, the rule of law is undisputed, and the only remaining issue is whether the facts satisfy a statutory standard--will not be disturbed on review unless clearly erroneous. Cinkus, 228 Ill. 2d at 211.

In their arguments on appeal, the parties dispute the import of section 7--10 of the Election Code (Code) (10 ILCS 5/7--10 (West 2006)) in light of the Supreme Court's decision in Kusper v. Pontikes, 414 U.S. 51, 38 L. Ed. 2d 260 , 94 S. Ct. 303 (1973), and our supreme court's subsequent decision in Sperling v. County Officers Electoral Board, 57 Ill. 2d 81 (1974). We therefore begin by discussing those two cases as they affect section 7--10 of the Code.

In 1971, the Code housed three relevant restrictions on changes in political party affiliation: it restricted party changes by (1) voters; (2) signers of nominating petitions; and (3) candidates for nomination in primary elections. Sperling, 57 Ill. 2d at 81-82.

The restriction on party changes by voters appeared in section 7--43 of the Code, which provided as follows:

"No person shall be entitled to vote at a primary:

* * *

(d) If he has voted at a primary *** of another political party within a period of 23 calendar months next preceding the calendar month in which such primary is held ***." Ill. Rev. Stat. 1971, ch. 46, par. 7--43(d).

The last paragraph of section 7--10 of the Code contained a restriction both on signers of nominating petitions and on candidates:

"For the purpose of determining eligibility to sign a petition for nomination or eligibility to be a candidate ***, a 'qualified primary elector' of a party (1) is an elector who has not requested a primary ballot of any other party at a primary election held within 2 years of the date on which the petition must be filed ***." Ill. Rev. Stat. 1971, ch. 46, par. 7--10.

In another, preceding portion of section 7--10, the Code placed an additional restriction on candidates by requiring that a candidate file a statement of candidacy that attests, among other things, that the candidate "is a qualified primary voter of the party to which the [nominating petition] relates." Ill. Rev. Stat. 1971, ch. 46, par. 7--10. (Although petitioner does not seek to be a primary candidate but instead a general election candidate, he was still statutorily required to meet this requirement. See 10 ILCS 5/7--61 (West 2006) (any resolution to fill a vacancy after a primary "shall be accompanied by a Statement of Candidacy, as prescribed in Section 7--10").) As the Code was written in 1971, the definition of the term "qualified primary voter of [a] party" (as the phrase appeared in the statement-of-candidacy requirement) was provided in the above-quoted last paragraph of section 7--10, and it required that the voter not have requested a primary ballot of any other party within two years.

Thus, in 1971, the Code barred voters, signers of primary petitions, and candidates from participating in primaries of one political party if they had participated in the primary of another political party within two years.

In Kusper, the Supreme Court held that the restriction on voters changing parties was unconstitutional on the ground that it violated voters' first and fourteenth amendment freedom to

associate. Kusper, 414 U.S. at 57-61, 38 L. Ed. 2d at 266-69, 94 S. Ct. at 307-10. The Supreme Court explained its holding as follows:

"There can be little doubt that § 7--43(d) substantially restricts an Illinois voter's freedom to change his political party affiliation. One who wishes to change his party registration must wait almost two years before his choice will be given effect. Moreover, he is forced to forgo participation in any primary elections occurring within the statutory 23-month hiatus. The effect of the Illinois statute is thus to 'lock' the voter into his pre-existing party affiliation for a substantial period of time following participation in any primary election, and each succeeding primary vote extends this period of confinement." Kusper, 414 U.S. at 57, 38 L. Ed. 2d at 267, 94 S. Ct. at 308.

Though it has been declared unconstitutional and thus cannot be enforced, section 7--43(d) remains a part of the Code today. See 10 ILCS 5/7--43(d) (West 2006).

In Sperling, our supreme court faced the question of whether the remaining two types of restrictions--the restriction on party changes by signers of petitions and the restrictions on candidates--were constitutional in light of Kusper. See Sperling, 57 Ill. 2d at 81-82 (summarizing types and sources of restrictions and quoting both the last paragraph of section 7--10 and the statement-of-candidacy portion of section 7--10). The supreme court held that "[t]he same reasoning which moved the Kusper court to hold invalid the 23-month restriction upon voter changes of political parties is *** applicable to the 2-year restriction upon those voters who wish to sign primary nominating petitions, and that restriction, too, must fall." Sperling, 57 Ill. 2d at 84. On the issue of whether a restriction on candidates' party changes could pass constitutional muster, the supreme court found it "clear that the State's interest in preserving the integrity of the political process will support

a reasonable restriction upon party-switching by candidates," and it noted case law indicating that a two-year restriction on candidate party-switching is constitutional. See Sperling, 57 Ill. 2d at 84-85. However, even so, the supreme court concluded its discussion as follows:

"That the restriction on candidates could be upheld against constitutional challenge is, however, of little help here. Such restrictions and establishment of the period of time involved are, within constitutional limitations, matters for legislative determination. We have here a legislatively designed plan for the preservation of the integrity of the political process which provided substantially similar restrictions for all three categories: voters, voters who sign primary nominating petitions, and voters who wish to be candidates. That plan has now been held to be constitutionally impermissible as to two of those three categories. The legislature has had no real opportunity since Kusper was announced last November to respond, and we cannot say absence of action by it indicates acquiescence. Likewise, our decision in this case may prompt legislative action. In short, it seems to us that the restrictive provisions upon the several categories of voters are so closely related that the General Assembly would not have enacted the portion relating to candidates apart from some restrictions upon voters generally and, more particularly, those voters who desire to sign primary petitions. [Citation.] In these circumstances the restrictions upon candidates cannot be considered independent and severable from the invalid portions of the plan." Sperling, 57 Ill. 2d at 86.

Indeed, the party-switching restrictions, especially the restrictions on petition signers and candidates, were very interrelated in the 1971 version of the Code. Both the signer and the candidate restrictions were located in section 7--10. The candidate restriction requiring candidates to attest to being a

"qualified primary voter of the party [whose nomination the candidate sought]" appeared to incorporate the " 'qualified primary voter' of a party" definition found in the last paragraph of section 7--10 (Ill. Rev. Stat. 1971, ch. 46, par. 7--10), and that last paragraph contained a restriction both on signers and on candidates. (As noted above, this candidate restriction in the last paragraph was in addition to the restriction on candidates in the statement-of-candidacy portion of section 7--10 of the Code.) Thus, the supreme court held that, absent some indication from the legislature that one of the types of restrictions on party-changing could survive independent of the others, the court could not sever the restrictions on candidates from the unconstitutional restrictions on voters and signers of petitions.

After Sperling, the relevant portions of the Code persisted unchanged until 1990, when the General Assembly enacted Public Act 86--1348 (Pub. Act 86--1348, eff. September 7, 1990), which removed the restriction that had been stricken in Sperling regarding signers of petitions. As relevant here, Public Act 86--1348 changed section 7--10 as follows (with strikeout used to show deletions and bold used to show additions):

> "~~For the purpose of determining eligibility to sign a petition for nomination or eligibility to be a candidate under this Article,~~ A 'qualified primary elector' of a party ~~(1) is an elector who has not requested a primary ballot of any other party at a primary election held within 2 years of the date on which the petition must be filed or (2) is a first-time voter in this State registered since the last primary of an even-numbered year preceding the date on which the petition must be filed, but no such person~~ may **not** sign petitions for or be a candidate in the primary of more than one party." Pub. Act 86--1348, eff. September 7, 1990.

The legislature did not, and to date has not, removed the statement-of-candidacy restriction in a preceding portion of section 7--10. See 10 ILCS 5/7--10 (West 2006) (candidate's statement of candidacy "shall state that the candidate is a qualified primary voter of the party to which the petition relates").

Against that backdrop, we return to the instant case. As noted, respondents argue that petitioner was not a "qualified primary voter" of the Democratic Party, as required under section 7--10 of the Code. Petitioner offers two rebuttals. Because both of these rebuttals present questions of law, our review is de novo. Cinkus, 228 Ill. 2d at 211.

First, petitioner argues that he need not have voted in the Democratic primary election in order to be considered a "qualified primary voter" of the Democratic Party. To support his argument, petitioner resorts initially to the statutory definition of a "qualified voter." See 10 ILCS 5/3--1 (West 2006). Because petitioner meets the qualifications contained in that definition--he is a United States citizen of voting age--he argues that he is "[b]y definition under the Code *** a 'qualified primary voter.'" We disagree. It may very well be true that petitioner is a "qualified voter," but the relevant inquiry in this case is whether he is a "qualified primary voter" of the Democratic Party, as required under section 7--10. Petitioner also cites the definition of "qualified primary elector" found in section 3--1.2 of the Code, which provides that, "[f]or the purpose of determining eligibility to sign a nominating petition," the term "'qualified primary elector'" means "a person who is registered to vote at the address shown opposite his signature on the petition or was registered to vote at such address when he signed the petition." 10 ILCS 5/3--1.2 (West 2006); see also Sperling, 57 Ill. 2d at 83 (holding that there is no substantive difference between the phrases "qualified primary elector" and "qualified primary voter" as used in the Code). Again, petitioner invokes an incomplete test. The

question here is not whether petitioner is a "qualified primary voter" but, rather, whether he is a "qualified primary voter" of the Democratic Party, as required under section 7--10. Petitioner makes no argument that he meets the party affiliation requirement of section 7--10.

We agree with respondents that petitioner, who voted in the Republican and not the Democratic primary in at least the three primaries preceding the upcoming general election, cannot be considered a "qualified primary voter" of the Democratic Party under section 7--10. The primary goal for a court interpreting a statute is to give effect to the intention of the legislature. Cinkus, 228 Ill. 2d at 216. "It is well established that when a statute defines the terms it uses, those terms must be construed according to the definitions contained in the [statute]." State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Group, 182 Ill. 2d 240, 244 (1998). However, without such a statutory definition, courts must look to the remaining language of the statute to find evidence of legislative intent. "The best evidence of legislative intent is the language used in the statute itself, which must be given its plain and ordinary meaning." Cinkus, 228 Ill. 2d at 216.

Though the Code at one time contained a definition of a "qualified primary voter" of the Democratic Party, that definition was deleted via Public Act 86--1348. Thus, we resort to the plain language to determine the meaning of the phrase. The plain and ordinary meaning of the requirement that a candidate be a qualified primary voter of the party for which he seeks a nomination mandates, if nothing else, that the candidate have been eligible to vote in the primary for that party in the most recent primary election preceding the candidate's filing the statement of candidacy. Because petitioner voted in the 2006 Republican primary, he was prohibited under the Code from voting in the Democratic primary that same year. See 10 ILCS 5/7--44 (West 2006) (a voter is to be given the primary ballot for the political party with which he declares himself affiliated, and "no person

declaring his affiliation with a statewide established political party may vote in the primary of any other statewide political party on the same election day"). Consistent with Kusper, he could have switched his party allegiance in the next primary. However, until that next primary, his status was "locked" as a Republican primary voter. (The time between primaries, and thus the time a voter's party status is "locked," is typically two years, but that is not always so. In fact, the time between the 2008 primary and the 2006 primary was less than two years. See Public Act 95--6, eff. June 20, 2007 (changing primary date from third Tuesday in March to first Tuesday in February).) Therefore, at all times between the 2006 primary and the next primary, in 2008, petitioner was a qualified primary voter of the Republican Party, and he was not a qualified primary voter of the Democratic Party. Likewise, when petitioner chose to vote in the Republican and not the Democratic primary in 2008, he was barred by statute from voting in the Democratic primary that same year. Accordingly, at all times since the 2008 primary (and until the next primary, now scheduled for 2010), including the time at which petitioner submitted his statement of candidacy pursuant to section 7--10, he was not a qualified primary voter of the Democratic Party. We therefore reject petitioner's argument that he met the requirement, from section 7--10 of the Code, that he be a qualified primary voter of the Democratic party at the time of his nomination.

Second, petitioner asserts that, in light of Sperling, "there are no current restrictions on the right of a candidate in Illinois" to change parties. In his appellate brief, petitioner appears to rely on the above-quoted passage from Sperling, which states that, because the court could not assume that the restrictions on candidates could exist independently of the restrictions found to be unconstitutional, the court was left to conclude that none of the three restrictions on party-switching remained viable. See also Dooley v. McGillicudy, 63 Ill. 2d 54 (1976) (noting that legislature had

not changed the Code in response to Sperling and thus applying the holding from Sperling). However, since Sperling, the legislature has amended the Code in a manner that speaks to the point raised in Sperling. When it enacted Public Act 86--1348, the legislature excised all of the portions of section 7--10 that seemed, when Sperling was decided, to be inextricably linked to the statement-of-candidacy restriction on candidates. The legislature deleted: (1) the statutory definition of the phrase "qualified primary voter for a party" (which was referenced in the statement-of-candidacy portion of section 7--10); (2) the restriction on petition signers; and (3) one of the two restrictions on candidate party-switching then found in section 7--10. However, the legislature left intact the restriction on party-changing in the statement-of-candidacy portion of section 7--10. The legislature thus demonstrated that that candidate restriction could exist independently. Put another way, after the supreme court in Sperling held that it could not conclude that the unconstitutional restrictions on party-switching could be severed from the statement-of-candidacy restriction on candidates, the legislature severed the unconstitutional restriction on petition signers from the statement-of-candidacy restriction on candidates. Accordingly, contrary to petitioner's argument, the legislature has spoken on this issue--the Code provides that a candidate must be a qualified primary voter of the political party for which he seeks a nomination.

Because the parties did not refer to Public Act 86--1348 in their written arguments on appeal, we issued an order in advance of oral argument instructing them to be prepared to address the issue. At oral argument, petitioner asserted that Public Act 86--1348 removed all candidate restrictions from the Code. Petitioner misperceives the relevant portion of the Code. While it is true that Public Act 86--1348 removed the candidate restriction that had appeared in the last paragraph of section 7--10, the public act did not remove the candidate restriction appearing in the statement-of-candidacy

portion of section 7--10. It is that restriction that is relevant to this appeal. In asserting at oral argument that Public Act 86--1348 removed from the Code restrictions on candidate party-switching, petitioner overlooks the statutory language that forms the basis of our decision today.

For the reasons stated, we conclude that the limitation on candidate party-switching found in the statement-of-candidacy portion of section 7--10 of the Code, which requires that a candidate attest to being a "qualified primary voter" of the party whose nomination the candidate seeks, is now viable even in light of Sperling. Because petitioner fails that statutory requirement, we agree with the Board that he is not eligible to be placed on the November 2008 general election ballot as the Democratic candidate for Senator of the 23rd Legislative District of Illinois.

For the foregoing reasons, we reverse the decision of the circuit court of Du Page County.

Reversed.

HUTCHINSON and ZENOFF, JJ., concur.