Docket No. 109725.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

_____

FREDERICK J. HOSSFELD, Appellant, v. THE ILLINOIS STATE
BOARD OF ELECTIONS *et al.*, Appellees.

*Opinion filed October 7, 2010.*

CHIEF JUSTICE FITZGERALD delivered the judgment of the
court, with opinion.

Justices Freeman, Thomas, Kilbride, Garman, Karmeier, and
Burke concurred in the judgment and opinion.

## OPINION

This appeal concerns the party-switching restrictions on political
candidates for the General Assembly under section 8–8 of the Election
Code (10 ILCS 5/8–8 (West 2008)). At issue is whether Steven J.
Rauschenberger was ineligible to run as a Republican candidate in the
February 2010 general primary election for the office of State Senator
because he voted a Democratic ballot in the February 2009
consolidated primary election in Elgin Township.

On September 22, 2010, following oral argument in this case, this
court issued its oral ruling affirming the judgment of the appellate
court, which held that Rauschenberger was eligible to run (398 Ill.
App. 3d 737). A written order to that effect was also entered on
September 22, stating that an opinion from this court would follow.

This is that opinion.

## BACKGROUND

The relevant facts are not in dispute. In February 2009, Steven Rauschenberger, who had historically voted a Republican ballot in primary elections, voted a Democratic ballot in the consolidated primary election in Elgin Township. Rauschenberger's sister was running for Democratic township trustee. The general township election, for which that primary was held, took place in April 2009. Six months later, in October 2009, Rauschenberger filed nomination papers seeking the Republican nomination for the office of State Senator of the 22nd Legislative District for the February 2, 2010, general primary election.[1] Pursuant to section 8–8 of the Election Code (10 ILCS 5/8–8 (West 2008)), Rauschenberger's nomination papers included a sworn "statement of candidacy" which stated, in relevant part, that Rauschenberger was a "qualified primary voter of the Republican Party."

Prior to the general primary election, Frederick J. Hossfeld, a registered voter of the 22nd Legislative District, filed an objector's petition challenging Rauschenberger's eligibility to run as a Republican candidate. Hossfeld argued that Rauschenberger's statement of candidacy falsely stated that he was a "qualified primary voter of the Republican Party." Relying on *Cullerton v. Du Page County Officers Electoral Board*, 384 Ill. App. 3d 989 (2008), Hossfeld maintained that because Rauschenberger had voted as a Democrat at the most recent primary election preceding the filing of his nomination papers, his status was "locked" as a Democratic primary voter until he voted in the February 2010 general primary election.

The State Board of Elections, sitting as the State Officers Electoral Board, appointed a hearing examiner who, relying on the *Cullerton* case, recommended that Hossfeld's objection be sustained. The Board's general counsel concurred. A subsequent vote by the

---

[1]Rauschenberger previously held the office of Republican Senator from the 22nd Legislative District from 1992 to 2006, when he unsuccessfully ran as the Republican candidate for Lieutenant Governor.

eight-member Board, however, resulted in a tie vote. Because a majority vote is required to invalidate nomination papers (10 ILCS 5/10–10 (West 2008)), Rauschenberger's name remained on the ballot for the February 2010 general primary election pending judicial review in the circuit court of Cook County. The circuit court distinguished the *Cullerton* case and denied Hossfeld's petition. In an expedited appeal, the appellate court affirmed, over a dissent. 398 Ill. App. 3d 737. The appellate majority held that the Election Code "no longer provides express time limitations on party-switching for candidates," and that Rauschenberger is a qualified primary voter of the Republican Party. 398 Ill. App. 3d at 743. Although the dissenting justice would have removed Rauschenberger from the ballot based on the *Cullerton* opinion (398 Ill. App. 3d at 744-45 (Steele, J., dissenting)), the appellate majority concluded that *Cullerton* is "notably different" from the present case (398 Ill. App. 3d at 743). We allowed Hossfeld's petition for leave to appeal. 210 Ill. 2d R. 315.

ANALYSIS

I

Although the Board failed to render a decision by a majority vote, and thus took no action on Hossfeld's objection, the Board's decision is nonetheless subject to judicial review. See 10 ILCS 5/10–10.1 (West 2008) (providing that an "objector aggrieved by the decision of an electoral board may secure judicial review"). While the Board's order does not set forth the reasons the members voted to sustain or deny Hossfeld's objection, the general counsel's recommendation, as well as the hearing examiner's report and recommended decision, both contain a detailed explanation for sustaining Hossfeld's objection. Thus, judicial review may be accomplished by reviewing these documents. See *Cook County Republican Party v. Illinois State Board of Elections*, 232 Ill. 2d 231, 241-43 (2009) (holding that tie-vote dismissals of Election Code complaints were subject to judicial review on the merits, based on the detailed explanation set forth in the general counsel's recommendation).

As to the appropriate standard of review, we agree with the appellate court that *de novo* review applies. 398 Ill. App. 3d at 740. An electoral board is viewed as an administrative agency. *Cinkus v.*

-3-

*Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 209 (2008). Thus, the standard of review is determined by the type of question on review. *Cinkus*, 228 Ill. 2d at 210. Here, the historical facts are not in dispute, and the question is a purely legal one: whether, based on our interpretation of section 8–8 of the Election Code, Rauschenberger is a "qualified primary voter of the Republican Party." Our review is "independent and not deferential." *Cinkus*, 228 Ill. 2d at 210.

II

Before considering the merits, we note that Rauschenberger has since won the Republican nomination for State Senator of the 22nd Legislative District. Hossfeld maintains, and we agree, that this event has not rendered this appeal moot. A case on appeal is moot where the issues raised below no longer exist because events subsequent to the filing of the appeal make it impossible for the reviewing court to grant the complaining party effectual relief. *Cinkus*, 228 Ill. 2d at 207-08. Though the primary election at which Rauschenberger's candidacy was challenged has passed, the November 2, 2010, general election at which the Senate seat he seeks will be decided has yet to occur. Moreover, and in any event, this appeal raises an issue of election law which "inherently is a matter of public concern" and reviewable under the public interest exception to the mootness doctrine. *Cinkus*, 228 Ill. 2d at 208.

III

Hossfeld argues, pursuant to *Cullerton*, that Rauschenberger was not a "qualified primary voter of the Republican Party" because he voted a Democratic ballot in "the most recent primary election preceding the filing of [his] statement of candidacy," and he was thus "locked" as a Democratic primary voter until he voted in the 2010 general primary election. *Cullerton*, 384 Ill. App. 3d at 996. Hossfeld maintains that no significance attaches to the fact that the Democratic ballot he voted was in a consolidated or local election, which was completed prior to Rauschenberger filing his nomination papers for a

statewide office.[2] Rauschenberger responds that the General Assembly has eliminated the "lock out" provisions in the Election Code, which were held unconstitutional (see *Kusper v. Pontikes*, 414 U.S. 51, 38 L. Ed. 2d 260, 94 S. Ct. 303 (1973); *Sperling v. County Officers Electoral Board*, 57 Ill. 2d 81 (1974)), and that under the current Election Code, Rauschenberger properly declared himself a qualified primary voter of the Republican Party. Rauschenberger further responds that *Cullerton* is limited by its facts and stands only for the proposition that a candidate is precluded from switching parties during an election cycle. Accordingly, Rauschenberger maintains that his Democratic vote in the 2009 consolidated election in Elgin Township did not preclude him from declaring himself a qualified primary voter of the Republican Party in his nomination papers for the 2010 general primary election. We agree with Rauschenberger.

Historically, the Election Code contained a two-year restriction on party-switching applicable to voters, signers of nomination petitions, and candidates. See generally *Sperling*, 57 Ill. 2d at 81-82. Specifically, under section 7–43(d), a person was not entitled to vote at a primary election if he had voted at the primary election of another political party within the preceding 23 months. Ill. Rev. Stat. 1971, ch. 46, par. 7–43(d). Section 7–10 contained a similar restriction applicable to signers of nominating petitions for primary elections and candidates for nomination in such primary elections. Section 7–10 required that nominating petitions shall be signed by "qualified primary electors," and that candidates, in their nomination petitions, must swear that he or she "is a qualified primary voter of the party to which the petition relates." Ill. Rev. Stat. 1971, ch. 46, par. 7–10. For purposes of determining eligibility to sign a nomination petition or to be a candidate, section 7–10 provided, in relevant part, that a "qualified primary elector" of a party "is an elector who has not requested a primary ballot of any other party at a primary election held

---

[2]Under the Election Code, municipal and township offices are filled at an election known as a "consolidated election," which is held in odd-numbered years. 10 ILCS 5/2A–1.1(b), 2A–1.2(c), (d) (West 2008). Certain federal, state and county offices (including State Senator) are filled at an election known as a "general election," which is held in even-numbered years. 10 ILCS 5/2A–1.1(a), 2A–1.2(a), (b) (West 2008).

within 2 years of the date on which the petition must be filed." Ill. Rev. Stat. 1971, ch. 46, par. 7–10.[3]

The restrictions on party-switching set forth in section 7–10 were mirrored in article 8 of the Election Code, which governs nominations of members of the General Assembly. Section 8–8 required a candidate to swear, in his or her statement of candidacy, that he or she is a "qualified primary voter of the party to which the petition relates." For purposes of determining eligibility to sign a nomination petition or to be a candidate under article 8, a "qualified primary elector" was defined in relevant part as "an elector who has not requested a primary ballot of any other party at a primary election held within 2 years of the date on which the petition must be filed." Ill. Rev. Stat. 1971, ch. 46, par. 8–8.

In *Kusper v. Pontikes*, 414 U.S. 51, 38 L. Ed. 2d 260, 94 S. Ct. 303 (1973), the Supreme Court held that the restriction against party-switching by voters contained in section 7–43(d) unconstitutionally infringed on the right of free political association protected by the first and fourteenth amendments. The Court explained that a voter who wished to change his party affiliation must wait almost two years before that choice will be given effect, and is forced to forgo participation in any primary elections occurring within the 23-month statutory hiatus. "The effect of the Illinois statute is thus to 'lock' the voter into his pre-existing party affiliation for a substantial period of time following participation in any primary election, and each succeeding primary vote extends this period of confinement." *Kusper*, 414 U.S. at 57, 38 L. Ed. 2d at 267, 94 S. Ct. at 308.

One year after the *Kusper* decision was entered, this court decided the *Sperling* case. There we held that, based upon the reasoning in *Kusper*, the two-year no-switch rule applicable to voters who wish to sign primary nominating petitions, set forth in section 7–10, must fall. *Sperling*, 57 Ill. 2d at 84. In *Sperling*, we also considered the continuing viability of the two-year no-switch rule applicable to candidates in primary elections. We observed that the "standards

---

[3]Although the Election Code refers to both a "qualified primary elector" and a "qualified primary voter," the phrases have the same meaning. *Sperling*, 57 Ill. 2d at 83.

governing party changes by candidates should be more restrictive than those relating to voters generally," and that "the restriction on candidates could be upheld against constitutional challenge." *Sperling*, 57 Ill. 2d at 84, 86. We concluded, however, that because the party-switching restrictions upon the three categories of voters are so closely related, the General Assembly would not have enacted the portion relating to candidates apart from some restrictions upon voters generally, and upon voters who sign primary nomination petitions. *Sperling*, 57 Ill. 2d at 86. "In these circumstances the restrictions upon candidates cannot be considered independent and severable from the invalid portions of the plan." *Sperling*, 57 Ill. 2d at 86. This court later clarified that, in the absence of amendatory legislation, the effect of the decisions in *Kusper* and *Sperling* was to "render inoperable" the two-year party-switching restrictions. *Dooley v. McGillicudy*, 63 Ill. 2d 54, 60 (1976).

In 1990, the General Assembly amended sections 7–10 and 8–8 of the Election Code. See Pub. Act 86–1348, §2, eff. September 7, 1990. Though retaining the requirement that a candidate must swear that he or she is a "qualified primary voter of the party to which the nomination petition relates," the General Assembly deleted the definition of "qualified primary elector." In so doing, the General Assembly deleted the two-year no-switch rule. After amendment, sections 7–10 and 8–8 stated simply that "[a] 'qualified primary elector' of a party may not sign petitions for or be a candidate in the primary of more than one party." Pub. Act 86–1348, §2, eff. September 7, 1990. Since 1990, the General Assembly has not adopted any time restrictions on party-switching by candidates or other definition of "qualified primary elector." More recently, the General Assembly deleted the no-switch rule applicable to voters set forth in section 7–43(d), which the *Kusper* opinion found unconstitutional. See Pub. Act 95–699, §5, eff. November 9, 2007. Thus, no vestige of the former party-switching rule remains in the statute.

Against this backdrop, the appellate court decided the *Cullerton* case in 2008. At issue was whether Thomas Cullerton was a "qualified primary voter of the Democratic Party" for purposes of section 7–10 of the Election Code. Cullerton had voted a Republican ballot in the February 2008 general primary election in Du Page County. Following

that primary, the Democratic Party, who had no candidate for State Senator of the 23rd Legislative District, nominated Cullerton as its candidate for the November 2008 general election. The Du Page County Electoral Board sustained an objection to Cullerton's candidacy, which the circuit court reversed. On appeal, the appellate court held that Cullerton was ineligible to run as a Democratic candidate in the general primary election. *Cullerton*, 384 Ill. App. 3d at 990. After reviewing the history of the party-switching provisions in the Election Code, the appellate court concluded:

> "The plain and ordinary meaning of the requirement that a candidate be a qualified primary voter of the party for which he seeks a nomination mandates, if nothing else, that the candidate have been eligible to vote in the primary for that party in the most recent primary election preceding the candidates' filing the statement of candidacy." *Cullerton*, 384 Ill. App. 3d at 996.

The appellate court explained that when Cullerton chose to vote in the Republican and not the Democratic primary in 2008, he was "locked" as a Republican primary voter until the next primary, then scheduled for 2010. Thus, at the time Cullerton submitted his statement of candidacy, he was not a qualified primary voter of the Democratic Party. *Cullerton*, 384 Ill. App. 3d at 996.

Though Hossfeld argues that the same result should obtain here, the situation addressed in *Cullerton* is not the situation we address here. In *Cullerton*, the candidate attempted to switch parties within one election cycle or season, *i.e.*, Cullerton voted a Republican ballot at the primary, but then sought to run as a Democratic candidate at the general election for which that primary was held. In contrast, the election cycle or season during which Rauschenberger voted a Democratic ballot–the 2009 consolidated election in Elgin Township–was completed with the general township election in April 2009, prior to Rauschenberger aligning himself with the Republican Party in his October 2009 nomination papers for purposes of the 2010 general primary. Rauschenberger has not attempted to switch parties during this new election cycle which will be completed with the November 2010 general election. Thus, Hossfeld's reliance on *Cullerton* is misplaced.

Moreover, we find nothing in the language of section 7–10 or 8–8

of the Election Code to support Hossfeld's argument that Rauschenberger's nomination papers falsely state that he is a "qualified primary voter of the Republic Party." As the appellate court here correctly observed, the Election Code no longer contains express time limitations on party-switching, and Rauschenberger did not run afoul of the only remaining restriction, set forth in both sections 7–10 and 8–8, that a " 'qualified primary elector' of a party may not sign petitions for or be a candidate in the primary of more than one party." See 398 Ill. App. 3d at 744. Further, no claim has been made that Rauschenberger did not meet the qualifications for primary voters generally which are set forth in section 7–43. See 10 ILCS 5/7–43 (West 2008) (setting forth residency and age restrictions for primary voters).

Though we agree with Hossfeld that party-switching restrictions on candidates for public office are an important protection in the electoral process, "[s]uch restrictions and establishment of the periods of time involved are, within constitutional limitations, matters for legislative determination." *Sperling*, 57 Ill. 2d at 86. After deleting the two-year no-switch rule, the General Assembly has not seen fit to enact any further time restrictions. Accordingly, under the present Election Code, Rauschenberger's nominating papers are valid.

CONCLUSION

For the reasons stated, we affirm the judgment of the appellate court affirming the judgment of the circuit court of Cook County that denied Hossfeld relief.

*Affirmed.*