# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Bocanegra v. City of Chicago Electoral Board*, 2011 IL App (1st) 110424

---

| | |
|---|---|
| Appellate Court Caption | SERGIO BOCANEGRA, Petitioner-Appellant, v. THE CITY OF CHICAGO ELECTORAL BOARD, BOARD OF ELECTION COMMISSIONERS OF THE CITY OF CHICAGO as the duly constituted CITY OF CHICAGO ELECTORAL BOARD, and members LANGDON D. NEAL, RICHARD A. COWEN, MARISEL A. HERNANDEZ, candidates JESUS "JESSE" INIGUEZ, Respondents-Appellees, and JOSE "CHAVELO" RODRIGUEZ, Respondent. |
| District & No. | First District, First Division<br>Docket No. 1-11-0424 |
| Filed | August 1, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The respondent board of election commissioners properly overruled petitioner's objections to the inclusion of respondent's name on the ballot for alderman, notwithstanding petitioner's contention that respondent failed to file a statement of financial interests as required by the city's campaign financing ordinance, since the city could not alter the statutory requirements for an elective municipal office by merely passing an ordinance, but, rather, the change had to be approved by the passage of a referendum as required by the Illinois Constitution, and even if the ordinance was a valid exercise of the city's home rule power, its enforcement had to be directed to the Ethics Board, not the Electoral Board. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2011-COEL-31; the Hon. Susan Fox-Gillis, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Andrew Finko, of Chicago, for appellants. |
| | James M. Scanlon & Associates, of Chicago (James M. Scanlon and Joan T. Agnew, of counsel), for appellees. |
| Panel | JUSTICE HOFFMAN delivered the judgment of the court, with opinion.<br>Presiding Justice Hall and Justice Rochford concurred in the judgment and opinion. |

**OPINION**

¶ 1    The petitioner, Sergio Bocanegra, filed written objections to the candidacy of respondent, Jesus "Jesse" Iniguez (candidate Iniguez), who sought election as alderman for the Twelfth Ward of the City of Chicago in the Municipal General Election to be held on February 22, 2011. After an evidentiary hearing, the Board of Election Commissioners of the City of Chicago (the Board) overruled the petitioner's objections and determined that candidate Iniguez was entitled to have his name included on the ballot as an aldermanic candidate. The petitioner sought judicial review in the circuit court of Cook County, which confirmed the decision of the Board. The petitioner now appeals. For the reasons that follow, we affirm the decision of the circuit court.

¶ 2    The relevant facts are undisputed.[1] In April 2010, candidate Iniguez created a campaign committee to promote his candidacy for alderman of the Twelfth Ward, and the committee filed a statement of organization on April 22, 2010. Candidate Iniguez filed a statement of financial interests with the City of Chicago Board of Ethics (Ethics Board) on November 12, 2010, and filed his nomination papers, along with his statement of candidacy, three days later.

¶ 3    The petitioner thereafter challenged candidate Iniguez's eligibility for aldermanic office by filing an objection before the Board. In his objection, which was docketed as 11-EB-ALD-

---

[1] Though a portion of the administrative proceedings is not included in the record on appeal, a copy of the Board's decision is attached as an exhibit to the petition for judicial review, and neither party disputes the accuracy of that exhibit. Because the Board's decision was based exclusively on matters of law and did not involve the determination of any factual questions, the absence of a complete administrative record does not hamper our ability to consider and resolve the issues raised on appeal.

199, the petitioner asserted that candidate Iniguez's oath, included in his statement of candidacy, was false because he had not filed a statement of financial interests with the Ethics Board within five days after qualifying as a candidate, in accordance with section 2-164-050 of the City of Chicago Campaign Financing Ordinance (Chicago Municipal Code § 2-164-050 (amended Dec. 5, 1990)) (Campaign Financing Ordinance). The petitioner further asserted that the failure to timely file a statement of financial interests with the Ethics Board rendered candidate Iniguez ineligible to take the oath of office and, therefore, precluded him from being included on the ballot for the February 2011 election.

¶ 4 Candidate Iniguez moved to dismiss the objection, and the petitioner filed a response. The hearing examiner appointed by the Board ruled in favor of candidate Iniguez and dismissed the petitioner's objection. The hearing examiner's findings and recommendations were adopted by the Board, which overruled the petitioner's objections and found that candidate Iniguez's nomination papers were valid. The Board's decision was based on the fact that the City could not alter the statutory requirements for elective municipal office merely by passing an ordinance, without adoption of a referendum. In addition, the Board determined that it did not have authority to address a violation of the Campaign Financing Ordinance. The Board noted that the ordinance specifically provided that the Ethics Board has the authority to initiate, receive, investigate, and act upon complaints of violations of its provisions. Chicago Municipal Code § 2-164-070 (amended Dec. 5, 1990). Accordingly, the Board concluded that it could not enforce the ordinance by removing the name of a candidate from the ballot.

¶ 5 Simultaneous with these proceedings, the petitioner filed a second objection challenging the nomination papers of Jose "Chavelo" Rodriguez, another candidate who also sought election as alderman for the Twelfth Ward. This second objection was docketed as 11-EB-ALD-197 and was premised on the same legal argument regarding the untimely filing of a statement of financial interests mandated by the Campaign Financing Ordinance. The hearing examiner's dismissal of this objection also was adopted by the Board.

¶ 6 The petitioner filed a single petition for judicial review in the circuit court, challenging the Board's decision in both cases. The circuit court confirmed the Board's decision finding that candidate Iniguez's nomination papers were valid, and the petitioner has appealed.[2]

¶ 7 Initially, we note that this appeal presents an issue of election law that is subject to review under the public-interest exception to the mootness doctrine. A case on appeal is moot where the issues raised below no longer exist because events subsequent to the filing of the appeal make it impossible for the reviewing court to grant the complaining party effective relief. *Hossfeld v. Illinois State Board of Elections*, 238 Ill. 2d 418, 423-24, 939 N.E.2d 368 (2010); *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 207-08, 886 N.E.2d 1011 (2008). Yet, the public-interest exception permits a court to reach the merits of a case which would otherwise be moot if the question presented is of a public nature, an authoritative resolution of the question is desirable for the purpose

---

[2] Candidate Jose "Chavelo" Rodriguez was found to be in default for failure to appear; he has not challenged that finding and is not a party to this appeal.

of guiding public officers, and the question is likely to recur. *Bonaguro*, 158 Ill. 2d at 395. All three of these factors are present here.

¶ 8 This appeal presents a question of election law which, inherently, is a matter of public concern. *Lucas v. Lakin*, 175 Ill. 2d 166, 170, 676 N.E.2d 637 (1997). In addition, disputes over ballot access based on the failure to comply with the Campaign Financing Ordinance are likely to recur in the future. Finally, resolution of such a dispute will aid election officials and circuit courts in deciding such disputes promptly. Thus, although the February 2011 election has been held and the aldermanic vacancy at issue in this case has been filled, this appeal falls within the public-interest exception to the mootness doctrine.

¶ 9 The fundamental issue presented by this appeal is whether the failure to timely file a statement of financial interests, as required by section 2-164-050 of the Campaign Financing Ordinance, which was not passed by referendum, precludes a candidate from having his name included on the ballot for an aldermanic election. We note that neither party has cited any Illinois case deciding this precise question. Because resolution of this issue presents a pure question of law, requiring the construction of statutory provisions, our review is *de novo*. *Hossfeld*, 238 Ill. 2d at 423. When interpreting a statute, the primary goal is to ascertain and give effect to the intent of the legislature, and the most reliable indication of the legislature's intent is the plain language of the statute. *Metzger v. DaRosa*, 209 Ill. 2d 30, 34-35, 805 N.E.2d 1165 (2004).

¶ 10 The Campaign Financing Ordinance provides, in relevant part, as follows:

"Every person who qualifies as a candidate shall thereby become a 'reporting individual' for purposes of Chapter 2-156 of this code, and shall file a statement of financial interests, in the form prescribed by the Board of Ethics pursuant to said chapter, within five days after qualifying as a candidate." Chicago Municipal Code § 2-164-050 (amended Dec. 5, 1990).

The ordinance further provides that "[n]o elected official shall be allowed to take the oath of office, continue in office or receive compensation from the city unless he has filed the [required] statement of financial interest." Chicago Municipal Code § 2-164-060 (amended Dec. 5, 1990). In addition, the ordinance states that the Ethics Board has the authority to initiate, receive, investigate, and act upon complaints of violations of its provisions. Chicago Municipal Code § 2-164-070 (amended Dec. 5, 1990).

¶ 11 The petitioner argues that, because candidate Iniguez failed to timely file a statement of financial interests within five days after qualifying as a candidate, he could not take the oath of office if elected and, therefore, was ineligible for elective municipal office. The petitioner further argues that, because section 10-5 of the Illinois Election Code (10 ILCS 5/10-5 (West 2010)) requires each candidate for office to swear or affirm under oath that he or she is legally qualified to hold such office, candidate Iniguez's statement of candidacy, asserting that he was qualified for the office of alderman, was false and that this circumstance prevented him from having his name included on the ballot in the election for that office. In response, the Board argues that the disclosure requirements set forth in the ordinance are not included in either the Election Code (10 ILCS 5/1-1 *et seq.* (West 2010)) or the Illinois Municipal Code (65 ILCS 5/1-1-1 *et seq.* (West 2010)) and that the provisions of the

ordinance do not constitute binding changes to the eligibility requirements for elective municipal office.

¶ 12    In support of his arguments, the petitioner relies primarily on the supreme court's decision in *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 886 N.E.2d 1011 (2008). In *Cinkus*, the nomination papers of a candidate for village trustee were challenged on the basis that he was indebted to the village. The objection was premised on section 3.1-10-5(b) of the Illinois Municipal Code, which provides that a person is "not eligible for an elective municipal office" if he is in arrears in the payment of an indebtedness due the municipality (65 ILCS 5/3.1-10-5(b) (West 2006)). *Cinkus*, 228 Ill. 2d at 204-05. The supreme court held that when this statutory provision is read together with section 10-5 of the Election Code, requiring a candidate to swear that he or she is qualified for the office specified, the disqualifications set forth in section 3.1-10-5(b) render a candidate ineligible to run for office if the disqualifying circumstance is not remedied by the time the candidate files his or her nomination papers. *Cinkus*, 228 Ill. 2d at 219-20. The supreme court's decision was predicated on the fact that the required statement of candidacy and accompanying oath are phrased in the present tense, thereby mandating that, when a candidate submits his or her nomination papers to run for office, the candidate swears that he or she currently is qualified for the office sought. *Cinkus*, 228 Ill. 2d at 219. The court concluded that a candidate is ineligible to run for office unless the disqualifying circumstances have been cured and the statutory provisions are satisfied prior to the filing of his or her nomination papers. *Cinkus*, 228 Ill. 2d at 219-20.

¶ 13    The petitioner claims that the holding in *Cinkus* controls in this case and that candidate Iniguez's failure to timely file his statement of financial interests prevented him from running for the office of alderman. We find, however, that *Cinkus* was predicated on the interpretation and application of two state statutes, rather than a municipal ordinance. As a consequence, it is factually distinguishable and does not govern the instant case.

¶ 14    Despite this critical distinction, the petitioner contends that *Cinkus* is applicable here because the Revised Cities and Villages Act of 1941 (the Act) (65 ILCS 20/21-0.01 *et seq.* (West 2010)) permits the Chicago city council to enact eligibility requirements for elective municipal office in the City of Chicago. In particular, the petitioner cites to section 21-28, which states that nomination petitions for aldermanic elections must conform to "the provisions of the election and ballot laws then in force in the city of Chicago." 65 ILCS 20/21-28 (West 2010). He further cites to section 21-35, stating that "[a]ll laws in force in the city of Chicago governing elections for municipal offices or applicable thereto and not inconsistent with the provisions of this article, shall apply to and govern all elections held under the terms of this article." 65 ILCS 20/21-35 (West 2010). Finally, the petitioner relies on section 21-24, which provides that "[t]he name of no person shall be printed upon the official ballot as a candidate for alderman, unless the terms of this article shall have been complied with." 65 ILCS 20/21-24 (West 2010).

¶ 15    According to the petitioner, the references in the Act to the laws "in force in the city of Chicago" include municipal ordinances and, therefore, authorize municipalities to enact additional eligibility requirements for election to an office created by state statute. We reject the petitioner's contention because it disregards the fact that municipalities organized under

the Illinois Municipal Code have only those powers that are delegated or necessarily implied by statute. See *People ex rel. Friend v. City of Chicago*, 261 Ill. 16, 19, 103 N.E. 609 (1913) (also recognizing that "statutes granting powers to municipal corporations are strictly construed, and any fair and reasonable doubt as to the existence of the power must be resolved against the municipality"); see also *McMahon v. City of Chicago*, 339 Ill. App. 3d 41, 45, 789 N.E.2d 347 (2003) (acknowledging that municipalities are limited to only those powers that are given to them by constitution and statute). Nothing in the plain language of the Act specifically provides or necessarily implies that a municipality has authority to alter the requirements for elective office by passage of an ordinance.

¶ 16 In addition, the petitioner's argument ignores the fundamental difference between a municipal ordinance, that has not been passed by referendum, and a state statute. Illinois courts have held that the Election Code and Article 3.1 of the Illinois Municipal Code are the laws that govern elections in the City of Chicago, except where they are inconsistent with the Act. See *United Citizens of Chicago & Illinois v. Coalition to Let the People Decide in 1989*, 125 Ill. 2d 332, 339-41, 531 N.E.2d 802 (1988); *Robinson v. Jones*, 186 Ill. App. 3d 82, 86-88, 542 N.E.2d 127 (1989).

¶ 17 In *Thies v. State Board of Elections*, 124 Ill. 2d 317, 529 N.E.2d 565 (1988), the supreme court held that, "where the Constitution undertakes to prescribe qualifications for office, its declaration is conclusive of the whole matter," and "the legislature is without authority to change or add to the qualifications unless the Constitution gives it the power." *Thies*, 124 Ill. 2d at 325 (citing *Cusack v. Howlett*, 44 Ill. 2d 233, 242-43, 254 N.E.2d 506 (1969), and *People ex rel. Hoyne v. McCormick*, 261 Ill. 413, 423, 103 N.E. 1053 (1913)). We find that the same result necessarily holds true with regard to municipal elective offices created by the Illinois legislature. Where an elective office is created by state statute, it is wholly within the power of the legislature to prescribe the qualifications for that office, and a municipality lacks authority to alter or add to those qualifications, unless such changes are accomplished as permitted by statute. Consequently, a municipality may amend the eligibility requirements for its elected officers only through passage of a municipal ordinance that has been approved via referendum in accordance with home rule power. See Ill. Const. 1970, art. VII, § 6(f) (providing that "[a] home rule municipality shall have the power to provide its officers, their manner of selection and terms of office only as approved by referendum or as otherwise authorized by law"). In the absence of such an exercise of home rule power, a municipality has no authority to create ballot-access barriers for candidates seeking elective municipal office.

¶ 18 This conclusion is consistent with the view expressed in prior opinions of the Attorney General. An Attorney General opinion issued in 2000 states that

> "when the subject matter [of an exercise of home rule power] concerns changing *** the manner of selection or terms of office of municipal officers[,] a statutory provision may be superseded only by referendum.
>
> *** [T]he statutory qualifications for office established by [the Illinois Municipal Code] may be altered by a referendum adopted in a home rule municipality pursuant to article VII, section 6 of the Constitution." 2000 Ill. Att'y Gen. Op. No. 00-003, at

4-5.

In addition, a 2005 Attorney General opinion states, in relevant part, as follows:

> "[P]ursuant to article VII, section 6, of the Illinois Constitution of 1970, a home rule municipality is authorized, subject to referendum approval, to adopt procedures for selecting municipal officers that differ from those set forth in either the Election Code or the [Illinois] Municipal Code.
>
> * * *
>
> *** [H]ome rule municipalities may change their manner of selecting officers only: (1) as provided by statute; or (2) as approved by a referendum." 2005 Ill. Att'y Gen. Op. No. 05-007, at 1-3 (citing *Leck v. Michaelson*, 111 Ill. 2d 523, 528, 491 N.E.2d 414 (1986), and *Clarke v. Village of Arlington Heights*, 57 Ill. 2d 50, 54, 309 N.E.2d 576 (1974)).

¶ 19     Although Attorney General opinions are not binding on the courts, a well-reasoned opinion of the Attorney General is entitled to considerable weight, especially in a matter of first impression in Illinois. *Burris v. White*, 232 Ill. 2d 1, 8, 901 N.E.2d 895 (2009); *Bonaguro v. County Officers Electoral Board*, 158 Ill. 2d 391, 399, 634 N.E.2d 712 (1994). We find that the reasoning of these Attorney General opinions, which are grounded on the Illinois Constitution and supreme court precedent, accurately characterizes Illinois law and we can perceive no reason to depart from the views expressed therein.

¶ 20     Though a municipality may have the ability to impose obligations regarding the disclosure of campaign contributions and other financial interests, that is not to say that a municipality has the authority to alter the requirements for its elected officials merely by passing an ordinance. An ordinance that has not been passed by referendum, pursuant to home rule powers as set forth in article VII, section 6(f), of the Illinois Constitution, is not the functional equivalent of "a law in force" for purposes of establishing procedures and prerequisites for election to municipal office. As a result, where such an ordinance has not been passed by referendum, the failure to comply with its terms cannot be enforced by removal of a candidate's name from the ballot.

¶ 21     Here, the Campaign Financing Ordinance, which purports to change the qualifications for those candidates seeking elective municipal office in the City of Chicago, was not approved by passage of a referendum as required by the Illinois Constitution. See Ill. Const. 1970, art. VII, § 6(f). Because the ordinance was not passed pursuant to a valid exercise of home rule power, its provisions do not constitute binding changes to the eligibility requirements for its officers.

¶ 22     Moreover, we agree with the Board's conclusion that, even if the ordinance constituted a valid exercise of the City's home-rule power and altered the eligibility requirements for municipal elective office, its enforcement must be directed to the Ethics Board. See Chicago Municipal Code § 2-164-070 (amended Dec. 5, 1990) (stating that the Ethics Board has the authority to initiate, receive, investigate, and act upon complaints of violations of its provisions). The authority of an electoral board is strictly limited to that prescribed by the legislature. *Kozel v. State Board of Elections*, 126 Ill. 2d 58, 68, 533 N.E.2d 796 (1988). There is nothing in the Campaign Financing Ordinance indicating that the Board is

authorized to address or enforce the failure to comply with its terms. Consequently, contrary to the petitioner's argument, the Board lacked the authority to remove the name of a candidate from the ballot as a means of enforcing the ordinance.

¶ 23 For the foregoing reasons, the judgment of the circuit court of Cook County, confirming the decision of the Board of Election Commissioners of the City of Chicago, is affirmed.

¶ 24 Affirmed.