Docket No. 102489.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

HON. GEORGE BRIDGES *et al.*, Appellees, v. THE STATE BOARD OF ELECTIONS *et al.*, Appellants.

*Opinion filed September 26, 2006.*

JUSTICE FITZGERALD delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Freeman, Kilbride, Garman, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

On April 14, 2006, the Sangamon County circuit court declared Public Act 94–727, which amended the Circuit Courts Act (705 ILCS 35/1 *et seq.* (West 2004)), unconstitutional. The State Board of Elections and its members (SBE) filed a direct appeal. See 134 Ill. 2d R. 302(a)(1). For the reasons that follow, we reverse the judgment of the circuit court.

## BACKGROUND

The Nineteenth Judicial Circuit currently covers Lake County and McHenry County. See 705 ILCS 35/1 (West 2002). There are 16 judgeships in that circuit: seven at-large judgeships elected by voters in both counties (see 705 ILCS 35/2, 2h(f) (West 2002)), six resident

judgeships elected by voters in Lake County, and three resident judgeships elected by voters in McHenry County (see 705 ILCS 35/2f–1(c) (West 2004)).

The Ninety-Third General Assembly sought to change the composition of the Nineteenth circuit. Senate Bill 75 split the Nineteenth circuit into the new Nineteenth circuit, covering Lake County, and the new Twenty-Second circuit, covering McHenry County. The bill also added five subcircuit judgeships in the new Nineteenth circuit and one at-large judgeship in the new Twenty-Second circuit. Thus, Senate Bill 75 left the new Nineteenth and Twenty-Second circuits with a total of 22 judges, 6 more than the current Nineteenth circuit.

The House offered an amendment to this bill. Like Senate Bill 75, the House amendment split the Nineteenth circuit into the new Nineteenth and Twenty-Second circuits, and it created subcircuits in both. The House, however, deleted the portion of Senate Bill 75 adding the six judgeships, and instead directed 11 of the 16 judgeships in the current Nineteenth circuit to the new Nineteenth circuit and the remaining five judgeships to the new Twenty-Second circuit. As amended, Senate Bill 75 passed the House and the Senate, Governor Blagojevich signed it, and it became Public Act 93–541 on August 18, 2003.

While Senate Bill 75 was pending, the Administrative Office of the Illinois Courts (AOIC) submitted fiscal and judicial notes regarding the House amendment. The notes read, in part: "Currently, the 19th Circuit has seven at-large judges. A total of 12 at-large circuit judges would be elected in the new 19th and 22nd Circuits, a net increase in five judges." The AOIC's notes were based upon its reading of section 2 of the Circuit Courts Act, which ties the number of at-large judgeships in a circuit to the population of the circuit: circuits other than Cook County with a population of more than 475,000 have eight at-large judgeships; circuits other than Cook County with a population of more than 270,000 have four at-large judgeships. 705 ILCS 35/2 (West 2004). The new Nineteenth circuit fell into the first category, and the new Twenty-Second circuit fell into the second category. Because Public Act 93–541 allocated five of the current Nineteenth circuit's seven at-large judgeships to the new Nineteenth circuit, the AOIC advised that that circuit was entitled to three additional at-large

judgeships. Because the Act allocated the other two at-large judgeships to the new Twenty-Second circuit, the AOIC advised that that circuit was entitled to two additional at-large judgeships.

On June 13, 2005, the SBE announced these five additional at-large judgeships would appear on the March 2006 primary election ballot. The new Nineteenth circuit judgeships were designated "Additional Judgeships A, B and C," and the new Twenty-Second circuit judgeships were designated as "Additional Judgeships A and B." On December 5, 2005, the SBE then posted a notice entitled "JUDICIAL OFFICES THAT WILL APPEAR ON THE MARCH 21, 2006 PRIMARY ELECTION BALLOT" on its website. The notice listed various vacancies, including the additional judgeships in the new Nineteenth and Twenty-Second circuits, but stated:

> "The Board has received information from the Speaker of the Illinois House and the President of the Illinois Senate that a bill will be called in January which would eliminate the full circuit additional judgeships in the newly created 19th and 22nd circuits. The Board will accept nomination papers during the period of December 12-19, 2005 for these judgeships if candidates choose to file, but please note that if such legislation is enacted by January 19, 2006, the Board will not certify the judgeships for the March 21, 2006 primary election ballot. Please note that if the legislation is enacted subsequent to the SBE certification date, the Board will amend the certification to remove those judgeships."

The General Assembly considered Senate Bill 1681, which addressed those additional judgeships, during the 2005 fall veto session. This bill failed to receive the supermajority required for it to become effective immediately, so the House Speaker moved the bill to another reading and later reconsideration. Because this bill was not enacted by January 19, 2006, the SBE certified the additional judgeships to appear on the March 2006 primary election ballot. Weeks later, Senate Bill 1681 passed the House and the Senate. Governor Blagojevich signed it, and it became Public Act 94–727 on February 14, 2006, more than a month before the primary election.

Public Act 94–727 provided that the number of at-large judgeships in the new Nineteenth and Twenty-Second circuits shall be the number set forth in Public Act 93–541–five in the new Nineteenth circuit and

two in the new Twenty-Second circuit–plus the judgeships which the SBE had certified as Additional Judgeship A in the Nineteenth circuit and Additional Judgeship A in the Twenty-Second circuit. See Public Act 94–727, eff. February 14, 2006 (adding 705 ILCS 35/2f–1(b–5)). Public Act 94–727 also amended section 2 of the Circuit Courts Act: "[Section 2] shall not apply to the determination of the number of circuit judgeships in the 19th and 22nd judicial circuits." Public Act 94–727, eff. February 14, 2006 (amending 705 ILCS 35/2).

The next day, February 15, 2006, the candidates for the new judgeships[1] filed a complaint against the SBE, its members, the Lake County clerk, and the McHenry County clerk in the Sangamon County circuit court. The plaintiffs sought a declaratory judgment that Public Act 94–727 was unconstitutional, an injunction preventing the SBE from decertifying the five additional judgeships, and an order commanding the county clerks to count the primary election votes for these judgeships. On February 17, 2006, the trial court entered an order prohibiting the SBE from decertifying candidates for the five additional judgeships. The SBE filed a motion to dismiss the plaintiffs' complaint, and the plaintiffs filed a motion for summary judgment.

After a hearing on these motions, the trial court asked the parties to submit draft orders. On April 14, 2006, the trial court signed the order submitted by the plaintiffs, denying the SBE's motion, and granting the plaintiffs' motion. This order stated that Public Act 93–541, coupled with section 2 of the Circuit Courts Act, created five new at-large judgeships–three for the new Nineteenth circuit and two for the new Twenty-Second circuit. The order then summarily concluded, without any legal analysis, that Public Act 94–727 violated article VI, sections 12(a), 12(c), and 12(e), of the Illinois Constitution (Ill. Const. 1970, art. VI, §§12(a), (c), (e)); article II, section 1, of the Illinois Constitution (Ill. Const. 1970, art. II, §1); article IV, section

---

[1] The candidates, and plaintiffs, are Nineteenth Circuit Associate Judge George Bridges, Nineteenth Circuit Associate Judge Valerie Ceckowski, Nineteenth Circuit McHenry County Resident Judge Michael Chmiel, Nineteenth Circuit Associate Judge Wallace Dunn, Nineteenth Circuit Associate Judge Gordon Graham, Nineteenth Circuit Associate Judge John Phillips, Nineteenth Circuit Associate Judge Theodore Potkonjak, and Stephen Haugh.

13, of the Illinois Constitution (Ill. Const. 1970, art. IV, §13); and article I, section 2, of the Illinois Constitution (Ill. Const. 1970, art. I, §2). The order finally stated that because Public Act 94–727 was not enacted until after the SBE had certified the candidates for the March 2006 primary election, the SBE was estopped from removing their names or the offices they seek from the November 2006 general election ballot.

The SBE appealed the trial court's order directly to this court. We allowed the plaintiffs' motion for an expedited briefing and hearing schedule.


ANALYSIS

All statutes carry a strong presumption of constitutionality. *People v. Botruff*, 212 Ill. 2d 166, 178 (2004), citing *People v. Maness*, 191 Ill. 2d 478, 483 (2000). To overcome this presumption, a party challenging a statute must clearly establish that it violates the constitution. *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 290 (2003). This court will affirm a statute's constitutionality if the statute is reasonably capable of such an interpretation. See *People v. Einoder*, 209 Ill. 2d 443, 450 (2004). Our review proceeds *de novo*. *Arvia v. Madigan*, 209 Ill. 2d 520, 536 (2004).

Though the constitutionality of Public Act 94–727 is before us, the SBE initially addresses Public Act 93–541. The SBE contends that Public Act 93–541 did not create five additional judgeships for the new Nineteenth and Twenty-Second circuits, and Public Act 94–727 necessarily passes constitutional muster because it merely clarified the legislature's intent.

The plaintiffs respond that Public Act 93–541 did create five additional judgeships, albeit indirectly. According to the plaintiffs, Public Act 93–541 did not place a ceiling on the number of at-large judges in the new Nineteenth and Twenty-Second circuits, but section 2 of the Circuit Courts Act did provide a floor. Section 2 established the minimum number of at-large judgeships for each circuit, based on population. The plaintiffs argue that when Public Act 93–541 allocated the seven at-large judgeships in the current Nineteenth circuit to the new Nineteenth and Twenty-Second circuits, it also dropped the new circuits below the number of at-large judgeships

mandated by section 2. The new circuits were, consequently, entitled to more judgeships.

We need not decide this disagreement, because even if Public Act 93–541 created additional judgeships, Public Act 94–727 clearly eliminated them, and clearly resolved any confusion about the effect of section 2 on the new circuits. Public Act 94–727 provided that the number of at-large judgeships in the new Nineteenth and Twenty-Second circuits shall be the number assigned to those circuits by Public Act 93–541–five and two, respectively–plus one additional at-large judgeship in each circuit. Public Act 94–727, eff. February 14, 2006 (adding 705 ILCS 35/2f–1(b–5)). The Act also amended section 2 to provide that it "shall not apply to the determination of the number of circuit judgeships in the 19th and 22nd judicial circuits." Public Act 94–727, eff. February 14, 2006 (amending 705 ILCS 35/2).

The General Assembly apparently felt that the SBE had misinterpreted Public Act 93–541, and Public Act 94–727 clarified the legislature's intent. Our inquiry turns to whether the legislature could correct the SBE without violating the Illinois Constitution.

The plaintiffs argue that Public Act 94–727 violates the separation of powers clause of the Illinois Constitution. See Ill. Const. 1970, art. II, §1; see also *Walker v. State Board of Elections*, 65 Ill. 2d 543, 562 (1976) (holding that the SBE is part of the executive branch). Public Act 94–727, the plaintiffs claim, is "an attack" on the SBE. The Election Code provides that "the State Board of Elections shall determine whether the General Assembly has created new judgeships which are to be filled at the next general election" (10 ILCS 5/25–3(b)(4) (West 2004)), and the plaintiffs assert that the SBE made this determination twice when it certified the plaintiffs as candidates for the additional judgeships. According to the plaintiffs, the legislature cannot certify or decertify candidates, and cannot determine who is on or off the ballot.

The plaintiffs fail to grasp that, while the SBE has the authority to determine whether a statute created new judgeships, the General Assembly has the authority to create such a statute in the first instance. Article VI, section 7(b), of the Illinois Constitution provides: "Each Judicial Circuit shall have one Circuit Court with such number of Circuit Judges as provided by law." Ill. Const. 1970, art. VI, §7(b). The General Assembly has plenary power to determine the number of

circuit judges; creating additional judgeships is "an act exclusively within the province of the legislature pursuant to our constitution." *McDunn v. Williams*, 156 Ill. 2d 288, 306-07 (1993). Any infringement on this power not only violates the clear language of article VI, section 7, but also threatens the separation of powers. *McDunn*, 156 Ill. 2d at 307; see generally *People v. Walker*, 119 Ill. 2d 465, 473 (1988). And because only the legislature may appropriate revenues for state expenditures, there are no funds available to pay for judgeships that the legislature did not create. *McDunn*, 156 Ill. 2d at 308, citing Ill. Const. 1970, art. VIII, §2(b).

The plaintiffs concede that the General Assembly has the constitutional authority to determine the number of judges in each circuit, but insists the General Assembly established this number with finality in section 2. Apparently, the plaintiffs do not believe that plenary power to determine the number of judges includes the power to reconsider because they contend that the General Assembly may not eliminate judgeships created by prior legislation. The plaintiffs rely on article VI, section 12(a), of the Illinois Constitution:

> "Supreme, Appellate and Circuit Judges shall be nominated at primary elections or by petition. Judges shall be elected at general or judicial elections as the General Assembly shall provide by law. A person eligible for the office of Judge may cause his name to appear on the ballot as a candidate for Judge at the primary and at the general or judicial elections by submitting petitions. The General Assembly shall prescribe by law the requirements for petitions." Ill. Const. 1970, art. VI, §12(a).

As the SBE correctly observes, a candidate's right to seek ballot access for a particular judgeship assumes that the judgeship exists. Here, the General Assembly eliminated three of the additional judgeships certified by the SBE, and section 12(a) provides no right to appear on the ballot to fill nonexistent judgeships. Further, article VI, section 12(e), of the Constitution provides that the legislature may reduce the number of judges, provided it does not prejudice the right of any judge to seek retention. See Ill. Const. 1970, art. VI, §12(e) ("A reduction shall become effective when a vacancy occurs in the affected unit"); see also *Hirschfield v. Barrett*, 40 Ill. 2d 224 (1968). Public Act 94–727 eliminated three judgeships, none of which, of

course, were occupied. The legislature could act without affecting any judge's right to seek retention. Sections 7(b) and 12(e) of article VI, by their express terms, permit this legislative action.

The plaintiffs assert that this result would establish a dangerous precedent because the legislature then could effectively control who holds office. According to the plaintiffs, if the legislature has the power to abolish judgeships that have been twice certified by the SBE, then it has seized the power to choose candidates, and therefore judges. The plaintiffs again ignore the fact that it is the General Assembly, not the SBE, which decides to create judgeships. The SBE announced five additional judgeships in the new Nineteenth and Twenty-Second circuits, and the legislature eliminated them, prior to any 2006 election.

The plaintiffs argue that Public Act 94–727 violates both the special legislation clause (Ill. Const. 1970, art. IV, §13) and the equal protection clause (Ill. Const. 1970, art. I, §2) of our state constitution. The plaintiffs essentially contend that Public Act 94–727 either treats citizens in other circuits with similar populations better than citizens in the new Nineteenth and Twenty-Second circuits or treats citizens in the new Nineteenth and Twenty-Second circuits worse than citizens in other circuits with similar populations. The new Nineteenth circuit, state the plaintiffs, is in the same population classification as the Twelfth and the Eighteenth circuits. Under section 2 of the Act, all such circuits are entitled to eight at-large judges. The Twelfth and Eighteenth circuits each have eight at-large judges; pursuant to Public Act 94–727, the new Nineteenth circuit would have only five at-large judges. The Twenty-Second circuit is in the same population classification as the Third and the Seventeenth circuits. Under section 2, all such circuits are entitled to four at-large judges; pursuant to Public Act 94–727, the new Twenty-Second circuit has only two. According to the plaintiffs, Lake County and McHenry County rank number one and three respectively in new filings per judge for 2004; these are the third and fourth fastest growing counties in the state. The new circuits need more judges.[2]

---

[2]The plaintiffs acknowledge that Public Act 94–727 added an at-large judgeship in the new Nineteenth circuit and an at-large judgeship in the

The General Assembly has plenary power to determine the number of judges in each circuit. It exercised this power more than 50 years ago when it enacted the precursor to section 2 and put in place a default population rule. See Ill. Rev. Stat. 1951, ch. 37, par. 72.2. Since 1975, the parameters of the default rule have remained the same, despite obvious growth in certain circuits. Compare Ill. Rev. Stat. 1975, ch. 37, par. 72.2 with 705 ILCS 35/2 (West 2004). The legislature has freely departed from the default rule with impunity, adding judgeships in subsequent acts as the need for them arose and the resources to fund them appeared. See, *e.g.*, 705 ILCS 35/2c, 2d, 2g, 2h, 2i, 2j (West 2004). Likewise, section 2 and its default rule was amended by Public Act 94–727. The legislature chose to determine the number of circuit judges in a manner besides population; this was the legislature's prerogative, and it was not limited by either the special legislation clause or the equal protection clause. See *Hirschfield*, 40 Ill. 2d at 233 (holding that the special legislation clause may not be used to upset legislation enacted in compliance with the Judicial Article of the state constitution). The plaintiffs' argument fails.

The plaintiffs finally argue that Public Act 94–727 violates the due process clause of our state constitution. See Ill. Const. 1970, art. I, §2. According to the plaintiffs, the legislature unconstitutionally changed the rules in the middle of the game. That is, the plaintiffs relied on the SBE's certification of the additional judgeships to their detriment, incurring obligations, conducting their campaigns, and somehow obtaining a vested interest in additional judgeships that the legislature never intended to create.

The plaintiffs had no such vested interest, merely "unilateral expectations" in the face of strong indications that the additional judgeships would be subject to further legislative action. See *Big Sky Excavating, Inc. v. Illinois Bell Telephone Co.*, 217 Ill. 2d 221, 242 (2005). The due process clause does not protect such expectations.

---

Twenty-Second circuit. Thus, the plaintiffs contend that the actual number of judgeships in dispute is three. The plaintiffs do not mention that before Public Act 94–727 became law, Public Act 93–1102 also added a subcircuit judgeship in the Twenty-Second circuit. See Pub. Act 93–1102, eff. April 7, 2005 (amending 705 ILCS 35/2f–5(a)).

Again, the plaintiffs' argument fails. We note that our conclusion here is limited to the facts of this case. We express no opinion whether our conclusion would have been different if the legislature had failed to act before the March 2006 primary election.

Because we conclude that the trial court erred in declaring Public Act 94–727 unconstitutional, we need not address the SBE's severability argument.

## CONCLUSION

For the reasons that we have stated, the judgment of the circuit court is reversed. The mandate shall issue forthwith.

*Reversed;*
*mandate issued forthwith.*