# Illinois Official Reports

## Appellate Court

---

### *Rudd v. Lake County Electoral Board*, 2016 IL App (2d) 160649

---

| | |
|---|---|
| Appellate Court Caption | THOMAS A. RUDD, Petitioner-Appellant, v. THE LAKE COUNTY ELECTORAL BOARD and Its Members, CARLA N. WYCKOFF, Lake County Clerk and Board Chairperson, MICHAEL G. NERHEIM, Lake County State's Attorney and Board Member, and His Designee KAREN D. FOX, KEITH S. BRIN, Lake County Circuit Court Clerk and Board Member, and His Designee JENNIFER RATHUNDE; and MICHAEL P. DONNENWIRTH and KEITH E. TURNER, Objectors, Respondents-Appellees. |
| District & No. | Second District<br>Docket No. 2-16-0649 |
| Filed | August 31, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 16-MR-1339; the Hon. Diane E. Winter, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Ross D. Secler, of Ross D. Secler & Associates, and Courtney C. Nottage, of Hinshaw & Culbertson LLP, both of Chicago, for appellant.<br><br>Michael G. Nerheim, of Waukegan (Joy C. Fitzgerald, Assistant State's Attorney, of counsel), for appellee Lake County Officers Electoral Board.<br><br>Odelson & Sterk, Ltd., of Evergreen Park (Burton S. Odelson and Mary Ryan Norwell, of counsel), for appellees Michael P. Donnenwirth and Keith E. Turner. |

Lisa Madigan, Attorney General, of Chicago (David L. Franklin, Solicitor General, of counsel), for other appellees.

Panel
JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.
Justices Birkett and Spence concurred in the judgment and opinion.


**OPINION**


¶ 1     Dr. Thomas Rudd appeals from an order of the circuit court refusing to grant him ballot position as an independent candidate for the office of Lake County Coroner. Rudd sued to overturn the decision of the Lake County Electoral Board, which found that Rudd was ineligible to seek office as an independent candidate in the current election cycle. The parties tell us that September 1, 2016, is the last day to print ballots and absentee ballots, so, with that date looming, we expedited this appeal.

¶ 2     Rudd is the incumbent Lake County Coroner. In March 2012, he won the Democratic primary, and, in November 2012, he defeated his Republican opponent in the general election to win a four-year term as county coroner. In November 2015, Rudd filed his nominating papers for the March 2016 primary for another term and for Democratic precinct committeeman for the area near his home, in northern Lake Forest. In both of his candidacy statements, Rudd averred that he was "a qualified Primary voter of the *Democratic* Party." Rudd's nominating papers for the coroner's race drew an objection for improper certification. Rudd did not contest the objection and instead withdrew from the Democratic primary for coroner. The following month, Rudd also withdrew from the primary for Democratic precinct committeeman. As a result, Rudd did not appear on the ballot in Lake County's March 2016 primary.

¶ 3     For context, we note that in Illinois, a candidate may run for office with an established political party, with a newly formed political party, as an independent, or as a write-in. Currently, the only two established, statewide political parties are the Democratic and Republican parties (see https://www.elections.il.gov/votinginformation/partyofficials.aspx (last visited Aug. 30, 2016, as were all other websites in this opinion)), and thus there are only two primary elections. Established party candidates must file to run generally at the end of November before the March primary (between 113 and 106 days before the primary (10 ILCS 5/7-12 (West 2012))), while independents and new party candidates must file circa the end of June after the primary (between 141 and 134 days before the general election (10 ILCS 5/10-6 (West 2012))). Illinois has an open primary system, which means that voters do not have to register with their party affiliation and may vote in either party's primary. Voters, however, must choose which party's ballot they will vote in the primary, and whichever ballot they choose is a matter of public record because it is considered a declaration of the voter's current party affiliation.

¶ 4    Rudd ultimately did not vote in the March 2016 primary. Rudd's former deputy coroner, Michael Donnenwirth, won the Democratic primary (he was unopposed) and is now that party's nominee for county coroner.

¶ 5    On June 27, 2016, Rudd filed nominating papers to run as an independent candidate for county coroner. Donnenwirth (and another individual, but we can refer to both collectively as Donnenwirth) objected to Rudd's nominating papers on two grounds. First, Donnenwirth claimed that Rudd's signature pages were not consecutively paginated. See 10 ILCS 5/10-4 (West 2012); see also *Wollan v. Jacoby*, 274 Ill. App. 3d 388, 394 (1995) (noting that the consecutive pagination requirement prevents tampering). The second basis for Donnenwirth's objection was that, because Rudd had originally filed nominating papers for the Democratic primary, he was ineligible under section 7-43 of the Election Code (10 ILCS 5/7-43 (West 2012)) to run as an independent candidate for any office in the November 2016 general election.

¶ 6    Enacted in 2012 (see Pub. Act 97-681, § 5 (eff. Mar. 30, 2012)), section 7-43 sets forth what is known as a no-party-switching rule, or as a disaffiliation/disqualification requirement. It provides:

> "A person (i) who filed a statement of candidacy for a partisan office as a qualified primary voter of an established political party or (ii) who voted the ballot of an established political party at a general primary election may not file a statement of candidacy as a candidate of a different established political party or as an independent candidate for a partisan office to be filled at the general election immediately following the general primary for which the person filed the statement or voted the ballot. A person may file a statement of candidacy for a partisan office as a qualified primary voter of an established political party regardless of any prior filing of candidacy for a partisan office or voting the ballot of an established political party at any prior election." 10 ILCS 5/7-43 (West 2012).

As the United States Supreme Court noted in *Storer v. Brown*, 415 U.S. 724 (1974):

> "[A disqualification law] protects the direct primary process by refusing to recognize independent candidates who do not make early plans to leave a party and take the alternative course to the ballot. It works against independent candidacies prompted by short-range political goals, pique, or personal quarrel. It is also a substantial barrier to a party fielding an 'independent' candidate to capture and bleed off votes in the general election that might well go to another party." *Id.* at 735.

We will revisit the decision in *Storer* later in this opinion.

¶ 7    The Electoral Board held a hearing at which both Rudd and Donnenwirth presented evidence and argument. The following day, the Board issued a 20-page written decision. As to Donnenwirth's first objection, Rudd's "nominating petition contained in excess of 1,400 pages [of signatures]," the Board wrote, "of which approximately 20 were not numbered precisely and/or consecutively." Accordingly, the Board found that Rudd's nominating papers were sufficient and overruled Donnenwirth's first objection. See *King v. Justice Party*, 284 Ill. App. 3d 886, 890 (1996) (accepting substantial compliance with pagination requirements).

¶ 8    The Board however sustained Donnenwirth's second objection. It found that, pursuant to section 7-43, Rudd was ineligible to stand for office as an independent candidate in the November 2016 election. Accordingly, the Board denied Rudd a position on the printed ballot.

Rudd had also argued to the Board that the disqualification statute was unconstitutional, but the Board (properly) refused to consider the issue. See *Bryant v. Board of Election Commissioners*, 224 Ill. 2d 473, 476 (2007) (holding that electoral boards have no authority to consider the constitutionality of a statute). Rudd promptly sought judicial review of the Board's administrative decision in the circuit court. See 735 ILCS 5/3-101 *et seq.* (West 2012). The circuit court affirmed the Board's decision, and Rudd has appealed to us. Since the facts are not in dispute, we review the Board's underlying decision *de novo*. *Jackson-Hicks v. East St. Louis Board of Election Commissioners*, 2015 IL 118929, ¶ 20.

¶ 9 Rudd presses two contentions on appeal. The first is that section 7-43, the disqualification statute (10 ILCS 5/7-43 (West 2012)), does not apply because Rudd, in his own opinion, successfully "disaffiliated" from the Democratic Party within the current election cycle. Rudd notes that "[n]ot only did [he] take the affirmative step of withdrawing" his Democratic primary candidacy for both coroner and precinct committeeman, "he also voluntarily chose not to vote in the 2016 March primary, and made it known publicly that he was going to run as an Independent prior to the primary." He directs us to a newspaper article titled, "Rudd Plans Independent Run for Coroner." Steve Sadin, *Rudd Plans Independent Run for Coroner*, Daily North Shore, Jan. 12, 2016, http://jwcdaily.com/2016/01/12/dr-thomas-rudd-plans-independent-run-for-lake-county-coroner/.

¶ 10 Rudd's argument overlooks that his withdrawal from the Democratic primary is a nonevent under section 7-43. The Election Code elsewhere provides that the names of withdrawn candidates "shall [not] be certified or printed on the primary ballot" (10 ILCS 5/7-12(9) (West 2012)), but that section, as the Board noted, does not require election authorities to treat a candidate as though he or she had never sought office as a member of an established political party in the same election cycle.[1] It is true, as Rudd notes, that a venerable legal dictionary defines of the word "withdraw" as "[t]o take back" and "[t]o retract" (Black's Law Dictionary (10th ed. 2014)) and so, Rudd is correct (at least, in a sense) when he says that his withdrawal from the March 2016 primary "nullified, *ab initio*" the effect of his nominating papers. But Rudd means more by this. He argues that by withdrawing from the Democratic primary, he effectively erased *the fact* that he ever filed as a Democratic candidate in the first place. We disagree.

¶ 11 The fact of Rudd's earlier established-party candidacy in this election cycle simply is not Rudd's to "take back." Once Rudd filed his nominating papers, his *sworn* statement of candidacy and his *sworn* statement of party affiliation were matters of public record, precisely because Rudd had publicly expressed them. See generally *People v. Perez*, 2014 IL 115927, ¶ 23 (citing *People ex rel. Schwartz v. Fagerholm*, 17 Ill. 2d 131, 137 (1959)); 735 ILCS 5/1-109 (West 2012); see also *Morrison v. Colley*, 467 F.3d 503, 510 (6th Cir. 2006) (stating that a "[candidate] cannot complain if his own *** express statement of his party affiliation is considered and used *** against him"). And even though Rudd did not receive campaign contributions as a Democratic candidate in this election cycle (see https://www.elections.il.gov/CampaignDisclosure/ContributionsSearchByCandidates.aspx),

---

[1] In an argument raised for the first time on appeal, Rudd's relies on a provision in the Election Code for the cancellation of cumulative nominating papers (see 10 ILCS 5/7-12(11) (West 2012)), but Rudd's reliance on that provision is unpersuasive because he never sought to timely cancel his initial Democratic nominating papers; instead, he withdrew them (10 ILCS 5/7-12(9) (West 2012)).

it would not be unreasonable to think that voters in the general election would come to Rudd's name on the ballot—an incumbent Democrat, no less—and think, "Wait, Rudd… Isn't he a Democrat?" After all, see, *e.g.*, Russell Lissau, *Lake County Board, State Races Emerge on First Day of Filing*, The Daily Herald, Nov. 23, 2015, http://www.dailyherald.com/article/20151123/news/151129646/ (noting that Rudd, "a Democrat in his first term who is seeking re-election," was "the first candidate in line" to file his nominating papers at the clerk's office). The disqualification statute is designed to, among other things, prevent such confusion. See *Storer*, 415 U.S. at 735.

¶ 12    That Rudd withdrew from and ultimately did not vote in the March 2016 primary is of no significance under section 7-43. The relevant portion of the statute makes this plain enough:

> "A person *** who *filed* a statement of candidacy for a partisan office as a qualified primary voter of an established political party *** *may not file* a statement of candidacy *** as an independent candidate for a partisan office to be filled at the [upcoming] general election ***." (Emphases added.) 10 ILCS 5/7-43 (West 2012).

Essentially, Rudd asks us to read (or to force the Board to read) an exception into section 7-43 for established-party candidates who have withdrawn from the primaries. This we cannot do. Our task is to apply the statute as it is written (*Jackson-Hicks*, 2015 IL 118929, ¶ 21; *Maksym v. Board of Election Commissioners*, 242 Ill. 2d 303, 318 (2011)), and it currently contains no such exception, regardless of whether the former established-party candidate voted in the primary. Similarly, we have no trouble rejecting Rudd's reliance on *dicta* in *Fleming v. State Board of Elections*, 40 Ill. App. 3d 695 (1976), *dicta* that merely speculated in the most general terms about whether a candidate's withdrawal from a party primary was tantamount to complete disaffiliation. *Fleming* was based on a version of the Election Code that was significantly different, and some 36 years older, than the one we have considered today. The Board correctly considered and applied the Election Code when it held that section 7-43 disqualified Rudd's independent candidacy.

¶ 13    Rudd's second contention is that section 7-43 violates his rights to equal protection under the law and to free speech under the federal and state constitutions. U.S. Const., amends. I, XIV; Ill. Const. 1970, art. I, §§ 2, 4. We apply the same standards under both constitutions. *Nevitt v. Langfelder*, 157 Ill. 2d 116, 124 (1993). All statutes carry a strong presumption of constitutionality, and to overcome the presumption, the party challenging the statute must clearly establish that it violates the constitution. *Bridges v. State Board of Elections*, 222 Ill. 2d 482, 489 (2006).

¶ 14    With respect to equal protection, Rudd notes that while section 7-43 bars him from running as an independent or as a candidate of another established party in the current election cycle, the statute draws no similar prohibition against the candidates of a "new political party." (Both independents and new-party candidates file within the same time frame, in June, after the primaries. See 10 ILCS 5/10-6 (West 2012).) Accordingly, Rudd argues that, because section 7-43 bars his independent candidacy but not his theoretical new-party candidacy, an equal protection violation is manifest.

¶ 15    The argument need not detain us for long. Equal protection requires that the law treat similarly situated individuals in a similar fashion, but in order for individuals to be similarly situated, they must be alike in all relevant respects. *In re Derrico G.*, 2014 IL 114463, ¶ 92 (citing *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). Can it be said that the candidate of a new political party, which is a fundamentally partisan endeavor, is similarly situated with an

independent candidate? In a word, no. Though Rudd's argument suggests the two are fungible, "the political party and the independent candidate approaches to political activity are entirely different." *Storer*, 415 U.S. at 745; see also *Stevenson v. State Board of Elections*, 638 F. Supp. 547, 554 (N.D. Ill. 1986). A new political party generally "contemplates [an] *** ongoing [political] organization." *Storer*, 415 U.S. at 745. Under the Election Code, for example, a new party must have officers, who are authorized to fill vacancies (10 ILCS 5/10-5 (West 2012)), and must slate candidates "for all offices" in its geographic area of operation (10 ILCS 5/10-2 (West 2012))—though one court recently found the latter requirement unconstitutional. See *Libertarian Party of Illinois v. Illinois State Board of Elections*, 164 F. Supp. 3d 1023 (N.D. Ill. 2016), *appeal pending*, No. 16-1775 (7th Cir.); *cf. Stevenson v. State Board of Elections*, 794 F.2d 1176, 1179-80 (7th Cir. 1986) (Easterbrook, J., concurring). An independent candidate on the other hand is, by definition, unaffiliated and nonpartisan, and can "campaign alone without the necessity of establishing a new political organization." *Stevenson*, 638 F. Supp. at 554.

¶ 16      Overall, the distinction between the necessarily affiliated and the necessarily unaffiliated, suffices for us to determine that independent and new-political-party candidates are not similarly situated. See *id.* That section 7-43 does not disqualify new-party candidates on the same basis as independents can be seen as encouraging the post-primary formation of alternative political parties by voters and candidates who may be either dissatisfied with the *status quo* or disappointed with the results of the primary. In any case, Rudd cites no authority that would compel the General Assembly to confer that same benefit on dissimilarly situated independent candidates, and thus, his equal protection claim fails.

¶ 17      We also reject Rudd's contention that section 7-43 violates his associational and free speech rights. The disqualification statute is, to be sure, a restriction on Rudd's right to access the ballot, but it is not a severe one. Only those laws that make ballot access "virtually impossible" (*Williams v. Rhodes*, 393 U.S. 23, 24 (1968)) or condition ballot access on an arbitrary factor (*e.g.*, *Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, 186-87 (1979) (disproportionate signature requirement); *Bullock v. Carter*, 405 U.S. 134, 143 (1972) (filing fees of up to 15% of candidate's salary)) or otherwise "prevent[ ] persons who wish to be independent candidates from entering the *** political arena" (*Anderson v. Celebrezze*, 460 U.S. 780, 790 (1983)) will be invalidated on constitutional grounds.

¶ 18      The United States Supreme Court, as noted earlier, and the Illinois Supreme Court have reviewed similar voter and candidate disqualification laws to the one at issue here. A prior version of section 7-43, which prevented voters from switching party affiliations for 23 months prior to the election, was held unconstitutional in *Kusper v. Pontikes*, 414 U.S. 51 (1973). Likewise, a similar two-year restriction on party-switching by petition circulators was struck down in *Sperling v. County Officers Electoral Board*, 57 Ill. 2d 81 (1974). But an 11-month restriction on voters switching parties in New York was upheld in *Rosario v. Rockefeller*, 410 U.S. 752, 760 (1973), as was a complete ban on write-in candidates in Hawaii (see *Burdick v. Takushi*, 504 U.S. 428, 439 (1992)).

¶ 19      In *Storer v. Brown*, 415 U.S. 724 (1974), the Court approved of a one-year disqualification law in California's election code. The Court held that such laws are justified by virtue of the states' interest in robust election regulation to prevent "splintered parties and unrestrained factionalism [that] may do significant damage to the fabric of government. See The Federalist, No. 10 (Madison)." *Id.* at 736. Further, the Court said:

"It appears obvious to us that the one-year disaffiliation provision furthers the State's interest in the stability of its political system. We also consider that interest as not only permissible, but compelling and as outweighing the interest the candidate and his supporters may have in making a late rather than an early decision to seek independent ballot status." *Id.*

¶ 20 The party-switching restriction in section 7-43 is virtually identical to the one upheld in *Storer*. See *id.* at 752. We find that section 7-43 is not excessively—and therefore not unconstitutionally—burdensome. All Rudd needed to do to appear on the ballot in the general election as an independent candidate was to not file in November 2015 as a candidate in the primary, and then to not vote in the March 2016 primary. "*Storer* held that a potential candidate was not significantly burdened by a statute that forced him to think ahead one full year before becoming an independent candidate" (*McClure v. Galvin*, 386 F.3d 36, 42 (1st Cir. 2004) (upholding Massachusetts's disqualification statute)), and we see no reason why the same logic should not apply here. See also *Hossfeld v. Illinois State Board of Elections*, 238 Ill. 2d 418, 429-30 (2010) ("[P]arty-switching restrictions on candidates for public office are an important protection in the electoral process, [and] '[s]uch restrictions and establishment of periods of time involved are, within constitutional limitations, matters for legislative determination.' *Sperling*, 57 Ill. 2d at 86."); *Bendinger v. Ogilvie*, 335 F. Supp. 572, 576 (N.D. Ill. 1971) ("The state's interest in limiting candidates from switching parties *** is greater than its interest in limiting voters from switching parties."); accord *Morrison*, 467 F.3d 503 (upholding Ohio's disqualification statute); *Thournir v. Meyer*, 909 F.2d 408 (10th Cir. 1990) (upholding Colorado's disqualification statute).

¶ 21 In sum, the Board correctly found Rudd ineligible to appear on the ballot as an independent candidate in the current general election cycle. In addition, we have determined that section 7-43 of the Election Code, which kept Rudd off the ballot, is constitutional as applied to him. We therefore affirm the judgment of the circuit court of Lake County.

¶ 22 Affirmed.