# Illinois Official Reports

## Appellate Court

---

### *People v. Brown*, 2017 IL App (1st) 140508-B

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSEPH BROWN, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-14-0508 |
| Filed | September 5, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CR-14282; the Hon. Rosemary Grant Higgins, Judge, presiding. |
| Judgment | Affirmed; mittimus corrected. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Lauren A. Bauser, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, John E. Nowak, and Joseph Alexander, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE MASON delivered the judgment of the court, with opinion.<br>Justices Lavin and Pucinski concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant Joseph Brown was convicted of possession of heroin with intent to deliver and sentenced as a Class X offender pursuant to section 5-4.5-95(b) of the Unified Code of Corrections (730 ILCS 5/5-4.5-95(b) (West 2012)). Brown was 20 years old at the time of the narcotics transaction at issue but turned 21 before his conviction. In *People v. Brown*, 2015 IL App (1st) 140508 (*Brown I*), we vacated Brown's sentence based upon our holding that the Class X sentencing statute required a defendant to be 21 years of age on the date of commission of the offense, not the date of conviction. Our supreme court reached the opposite conclusion in *People v. Smith*, 2016 IL 119659, and directed us to vacate *Brown I*.

¶ 2    We now address additional issues raised by Brown that we did not reach in *Brown I* because of our interpretation of the Class X statute. Brown argues that basing his eligibility for Class X sentencing on his age at the time of his conviction rather than at the time of the offense is a violation of (i) the prohibition against *ex post facto* laws, (ii) constitutional due process protections, and (iii) the constitutional right to equal protection. Although we are not unsympathetic to Brown's arguments, our supreme court has upheld similar sentencing schemes against claims of arbitrariness and due process violations. Accordingly, finding no constitutional infirmity in the statute, we affirm Brown's sentence.

¶ 3                              BACKGROUND

¶ 4    On July 3, 2013, 20-year-old Brown was arrested after an officer observed him engaging in the sale of heroin. On July 29, 2013, Brown was charged with possession of a controlled substance with intent to deliver. He turned 21 years old the next day.

¶ 5    Following a bench trial on November 18, 2013, Brown was found guilty of possessing more than 1 but less than 15 grams of heroin with intent to deliver, a Class 1 felony with a sentencing range of 4 to 15 years. Based on Brown's two prior convictions for Class 2 felonies, the trial court found that he was subject to mandatory Class X sentencing and sentenced him to six years of imprisonment, the minimum term for a Class X offender. 730 ILCS 5/5-4.5-25(a) (West 2012) (sentencing range for a Class X felony is 6 to 30 years).

¶ 6    On appeal, Brown did not challenge his conviction, but he argued that he was ineligible for Class X sentencing based upon his age at the time of the offense. The Class X recidivist provision applies "[w]hen a defendant, over the age of 21 years, is convicted of a Class 1 or Class 2 felony" after having been convicted of two prior felonies of Class 2 or higher. 730 ILCS 5/5-4.5-95(b) (West 2012). Brown argued that "over the age of 21 years" referred to a defendant's age at the time the offense was committed, not at the time of conviction; alternately, he argued that measuring Class X eligibility by a defendant's age at the time of conviction would be unconstitutional.

¶ 7    In *Brown I*, 2015 IL App (1st) 140508, we agreed with Brown's interpretation of the statute and therefore did not reach the constitutional issues he raised. Following *People v. Smith*, 2016 IL 119659, ¶ 31, our supreme court directed us to vacate *Brown I*. We now address the constitutional issues raised by Brown, which were not raised in *Smith*.

¶ 8                                           ANALYSIS

¶ 9          Brown contends that applying the Class X recidivist provision based on a defendant's age
on the date of conviction, rather than on the date the offense is committed, is unconstitutional
because (i) it violates the prohibition against *ex post facto* laws, insofar as it punishes him for
an event (his twenty-first birthday) occurring after the commission of the offense, (ii) it
violates due process rights since there is no rational basis to increase a defendant's punishment
based on his age at the time of conviction, and (iii) it violates equal protection principles since
similarly-situated defendants may be subject to different sentencing ranges based upon
whether they turn 21 years old before being convicted.

¶ 10         Although Brown did not raise these issues in the trial court, a party may challenge the
constitutionality of a statute at any time. *People v. Carpenter*, 368 Ill. App. 3d 288, 291 (2006)
(defendant had right to challenge constitutionality of statute for the first time on appeal). All
statutes are presumed constitutional, and the party challenging a statute bears the burden of
rebutting that presumption. *People v. Greco*, 204 Ill. 2d 400, 406 (2003). If reasonably
possible, we will construe a statute in a way that upholds its constitutionality. *Carpenter*, 368
Ill. App. 3d at 291.


¶ 11                                   *Ex Post Facto* Prohibition

¶ 12         We begin by considering Brown's contention that section 5-4.5-95(b) is an *ex post facto*
law. Both the United States Constitution and the Illinois Constitution prohibit the enactment of
*ex post facto* laws. U.S. Const., art. I, § 10; Ill. Const. 1970, art. I, § 16; see *Hadley v. Montes*,
379 Ill. App. 3d 405, 408-09 (2008) (Illinois Constitution's prohibition on *ex post facto* laws is
coextensive with that in the federal constitution) (citing *People v. Cornelius*, 213 Ill. 2d 178,
207 (2004)). In determining whether a criminal law is *ex post facto*, courts apply a two-prong
test:

             "[A] criminal law will be considered *ex post facto* where it (1) is retrospective in that it
             applies to events occurring prior to its enactment, and (2) falls into one of the
             traditional categories of prohibited criminal laws. [Citation.] These traditional
             categories include any statute that punishes as a crime an act previously committed and
             innocent when done; laws that make the punishment for a crime more burdensome after
             its commission; and statutes that deprive one charged with a crime of any defense
             available at the time when the act was committed." *People v. Pena*, 321 Ill. App. 3d
             538, 541 (2001) (citing *Collins v. Youngblood*, 497 U.S. 37, 42 (1990)).

See also *Lynce v. Mathis*, 519 U.S. 433, 441 (1997) ("To fall within the *ex post facto*
prohibition, a law must be retrospective—that is, it must apply to events occurring before its
enactment—and it must disadvantage the offender affected by it [citation] by altering the
definition of criminal conduct or increasing the punishment for the crime [citation]." (Internal
quotation marks omitted.)). The purpose of this prohibition is "to ensure that legislative
enactments give fair warning of their effect and permit individuals to rely on their meaning
until explicitly changed." *People v. Criss*, 307 Ill. App. 3d 888, 896 (1999).

¶ 13         Section 5-4.5-95(b) satisfies the second prong of the definition of an *ex post facto* law
since it "make[s] the punishment for a crime more burdensome after its commission" (*Pena*,
321 Ill. App. 3d at 541). When Brown engaged in the drug transactions at issue in this case, he
was 20 years old and the sentencing range for his crime—possession of more than 1 but less
than 15 grams of heroin with intent to deliver—was 4 to 15 years. 720 ILCS 570/401(c)(1)

(West 2012); 730 ILCS 5/5-4.5-30(a) (West 2012). Only later did he turn 21 years old, which made him subject to a mandatory Class X sentencing range of 6 to 30 years. 730 ILCS 5/5-4.5-25(a) (West 2012).

¶ 14 But section 5-4.5-95(b) does not satisfy the first prong, that of retrospective application. *Toia v. People*, 333 Ill. App. 3d 523, 529 (2002) (under *Pena*, whether a law has retroactive effect is a separate prong—and, therefore, a separate inquiry—than whether the law falls into a category of prohibited criminal laws). The courts of this state, as well as the United States Supreme Court, have defined a retrospective law as one that applies to events occurring prior to its enactment. *Pena*, 321 Ill. App. 3d at 541; *Lynce*, 519 U.S. at 441; *People v. Kotecki*, 279 Ill. App. 3d 1006, 1010 (1996) ("A law is retroactive if it applies to events which occurred before the law was enacted."); *People v. Caruso*, 152 Ill. App. 3d 1074, 1077 (1987) (to be *ex post facto*, a law "must be retrospective, that is, it must apply to events occurring before its enactment"). The Class X recidivist provision does not meet this element; it was enacted on January 1, 1977, well before Brown committed his offense. Accordingly, Brown cannot claim that he did not have "fair warning" (*Criss*, 307 Ill. App. 3d at 896) of the statute's provisions.

¶ 15 Brown argues that the element of retroactivity is established "not by the enactment date on which the entire statute became effective, but by a second effective date contained within the terms of the statute itself"—*i.e.*, a defendant's twenty-first birthday. If this "second effective date" triggers after a defendant commits a crime, but before the defendant is convicted, then the punishment for the crime is increased. But, as discussed, this after-the-fact increase in punishment already satisfies the second prong of the test. So, in essence, Brown is asking us to collapse the two prongs of *ex post facto* analysis and hold that any law that "make[s] the punishment for a crime more burdensome after its commission" (*Pena*, 321 Ill. App. 3d at 541) is automatically a prohibited *ex post facto* law, irrespective of the date of its enactment. We decline to adopt this proposed expansion of the definition of an *ex post facto* law. As cited above, courts have consistently defined retrospectivity by reference to the date of the law's enactment, and Brown does not cite any cases to the contrary.

¶ 16 Brown additionally argues that section 5-4.5-95(b) violates the principles that undergird the prohibition on *ex post facto* laws. Since a prospective defendant under the age of 21 cannot necessarily predict whether he will be subject to Class X sentencing, Brown argues that the law fails to provide fair notice to such individuals. On the particular facts of this case, we disagree. Brown sold heroin on July 3, 2013, less than a month before his twenty-first birthday on July 30. He could reasonably have predicted that if caught and charged, his twenty-first birthday would pass before the conclusion of his trial, and a guilty verdict would subject him to Class X sentencing. Under such circumstances, we cannot say that Brown lacked fair notice of the potential penalty for his actions. *People v. P.H.*, 145 Ill. 2d 209, 219 (1991) (in addressing constitutional issue, court "will not formulate a rule broader than that necessitated by the precise situation in question"); *In re J.W.*, 346 Ill. App. 3d 1, 13 (2004) (same). Accordingly, we find that, as applied to Brown, section 5-4.5-95(b) is not an unconstitutional *ex post facto* law.

¶ 17 Due Process

¶ 18 Brown next argues that section 5-4.5-95(b) violates constitutional due process protections because (i) it does not provide fair notice to defendants as to whether they will be subject to Class X sentencing and (ii) it is arbitrary, in that there is no rational basis for predicating Class

- 4 -

X eligibility upon a defendant's age at the time of conviction. We consider these contentions in turn.

¶ 19    Due process requires that criminal defendants have fair warning of the criminal penalties that will attach to their conduct. *Marks v. United States*, 430 U.S. 188, 191 (1977). Thus, "[a] sentencing statute may be void for vagueness if it does not state with sufficient clarity the consequences of violating a given criminal statute." (Internal quotation marks omitted.) *People v. Winningham*, 391 Ill. App. 3d 476, 482 (2009). However, due process does not require " 'mathematical certainty in language.' " *Id.* (quoting *People v. Ramos*, 316 Ill. App. 3d 18, 26 (2000)). In cases that do not implicate the first amendment, due process requires that a statute be sufficiently definite so that (i) a person of ordinary intelligence has fair warning as to what is prohibited and (ii) application of the statute does not depend merely on the private conceptions of law enforcement officers and triers of fact. *People v. Sharpe*, 216 Ill. 2d 481, 527 (2005); *People v. Vasquez*, 2012 IL App (2d) 101132, ¶ 54.

¶ 20    The State argues that section 5-4.5-95(b) provides the requisite fair warning because its text is clear: any defendant over the age of 21 years at the time of conviction will be subject to the Class X recidivist provision if the other conditions in the statute are met. Brown argues that this warning is illusory since defendants under the age of 21 have no way of knowing when they commit their offenses whether they will be subject to Class X sentencing. He points out that the date of conviction is affected by a wide variety of factors outside a defendant's control. Such factors include the timing of the prosecutor's charging decision, how crowded the court's docket is, and the backlog of cases handled by a defendant's attorney or public defender. Some cases may also be delayed due to DNA testing and/or fitness determinations. 725 ILCS 5/103-5(c), (e) (West 2012). Thus, Brown hypothesizes that a person of ordinary intelligence under the age of 21 who is contemplating criminal activity may not know the sentencing range that will attach to his conduct.

¶ 21    Brown's arguments are not dependent on a presumption of bad faith or intentional delay by either trial judges or prosecutors. There is certainly no evidence of bad faith by any of the government actors in Brown's case. But even in the absence of intentional foot-dragging, unpredictable delays can and will occur. Thus, Brown argues, he did not have notice on July 3, 2013, when he committed the offense, of what his sentencing range would be.

¶ 22    Again, under the facts of this particular case, we disagree. As discussed, Brown committed the crimes at issue less than a month before his twenty-first birthday. Although he might not have known his sentencing range with " 'mathematical certainty' " (*Winningham*, 391 Ill. App. 3d at 482 (quoting *Ramos*, 316 Ill. App. 3d at 26)), a person of ordinary intelligence would have known that if he were caught and charged and chose to proceed to trial, any conviction would very likely occur after he turned 21. Accordingly, limiting our analysis to the facts before us (see *P.H.*, 145 Ill. 2d at 219; *J.W.*, 346 Ill. App. 3d at 13), we find that Brown had the requisite fair warning of the criminal penalties attaching to his conduct.

¶ 23    Due process additionally prohibits the arbitrary or unreasonable exercise of the State's police power. *People v. Wilson*, 214 Ill. 2d 394, 402 (2005). To constitute a legitimate exercise of the police power, a statute " 'must bear a reasonable relationship to the public interest intended to be protected, and the means adopted must be a reasonable method of accomplishing the desired result.' " *Id.* (quoting *People v. Falbe*, 189 Ill. 2d 635, 640 (2000)).

¶ 24    Brown argues that section 5-4.5-95(b) fails to meet this standard. If we were writing on a clean slate, we would be inclined to agree. The Class X recidivist provision is limited to those

over 21 based on the legislature's recognition that young defendants are both less culpable and more amenable to rehabilitation than older offenders. *People v. Williams*, 358 Ill. App. 3d 363, 367 (2005); see also *People v. Storms*, 254 Ill. App. 3d 139, 142 (1993) (section 5-4.5-95(b) reflects the presumption that individuals under the age of 21 have greater rehabilitative potential than older defendants). But that determination would logically be based upon defendant's actions and state of mind at the time of the offense, not at some future point in time. As discussed, the passage of time between a defendant's commission of an offense and his conviction is dependent on a wide variety of factors that are entirely unrelated to the defendant's culpability or his potential for rehabilitation. A young defendant may effectively be penalized because the circuit court has an overcrowded docket or his public defender has a large backlog of cases—which does not imply any fault on the part of the court or the public defender but does highlight the arbitrariness inherent in calculating Class X eligibility based upon the date a verdict is finally rendered.

¶ 25    But we do not write on a clean slate. Our supreme court has upheld sentencing schemes that are based upon a defendant's age at the time of sentencing (*In re Griffin*, 92 Ill. 2d 48 (1982)) and at the time of charging (*People v. Fiveash*, 2015 IL 117669), even though they result in more severe punishment than the defendant would have been subject to when the offense was committed.

¶ 26    In *Griffin*, our supreme court interpreted a provision of the Juvenile Court Act providing that a delinquent minor could be committed to the Illinois Department of Corrections " 'if he is 13 years of age or older.' " *Griffin*, 92 Ill. 2d at 50 (quoting Ill. Rev. Stat. 1977, ch. 37, ¶ 705-2(1)(a)(5)). Griffin was 12 years old when he was adjudicated a delinquent for committing armed robbery and aggravated battery. The trial court continued the case until four days after Griffin's thirteenth birthday and then committed him to the Illinois Department of Corrections. *Id.* Our supreme court upheld the disposition, holding that it was the minor's age at the time of the dispositional hearing and not at the time of the offense that determined his eligibility for incarceration. *Id.* at 52. The court further stated:

> "There is no merit to the contention that our interpretation is so arbitrary that the legislature could not have intended it. The interpretation is no more arbitrary than the statutory declaration that a minor's 13th birthday endows him with a 'criminal capacity,' or Griffin's suggestion that eligibility for commitment should depend upon the precise date he is found to be delinquent. Griffin's complaint is actually against the legislature's plain and unambiguous language expressing the legislative intent." *Id.* at 53.

¶ 27    Although Griffin did not raise any constitutional challenge to the statute, the court's discussion indicates that it did not view the statute as so arbitrary that it would violate principles of due process. According to the court, basing an individual's sentencing options on his age at the time of sentencing is "no more arbitrary" than basing them on his age at the time of the commission of the offense.

¶ 28    The court confronted a similar issue in *Fiveash*, 2015 IL 117669. In 2003, when defendant was 14 or 15 years old, he sexually assaulted his 6-year-old cousin. Nine years later, in April 2012, police unexpectedly uncovered information relating to the assault. The following month, the 23-year-old defendant was charged with aggravated criminal sexual assault and, since he was no longer a minor, was prosecuted in adult criminal court. *Id.* ¶ 10. Thus, his sentencing range was effectively determined by his age when he was charged, rather than his age when he

- 6 -

committed the offense. Defendant argued, among other things, that this violated his due process rights because adult criminal court could impose a much harsher sentence than could have been imposed in juvenile court for the same offense. *Id.* ¶ 43.

¶ 29    *Fiveash* rejected this argument. The court acknowledged that "juvenile offenders tried in adult criminal court could potentially be subjected to harsher adult punishments without proper consideration of their unique physical and mental characteristics." *Id.* ¶ 45 (citing *Roper v. Simmons*, 543 U.S. 551 (2005), *Graham v. Florida*, 560 U.S. 48 (2010), and *Miller v. Alabama*, 567 U.S. 460 (2012) (recognizing the importance of considering juveniles' unique characteristics in sentencing)). But the court held that due process does not require juveniles' unique characteristics to be taken into account when the potential punishment is a term of imprisonment, rather than a life sentence or the death penalty. *Id.* Thus, the court found that prosecuting defendant in adult criminal court—and imposing an adult sentence notwithstanding his age at the time he committed the offense—did not violate due process principles.

¶ 30    Section 5-4.5-95(b), which dictates Class X eligibility based upon a defendant's age at the time of conviction, is no more arbitrary than the sentencing schemes upheld in *Griffin* and *Fiveash*, both of which allowed a defendant's sentence to be increased based upon the passage of time after the commission of the offense. Brown argues that he is being penalized for the length of his trial proceedings, which was dependent on factors outside of his control and unrelated to either his culpability or his potential for rehabilitation. And as we noted above, we are not unsympathetic to this argument, although here the delay between Brown's charge and his conviction was a brief four months. But Griffin was similarly penalized for the length of his dispositional proceedings, while Fiveash was penalized for the length of time it took for his crime to be reported, and our supreme court found no constitutional defect in either case. Additionally, Brown was not a juvenile when he committed the crime at issue so the constitutional concerns raised in *Fiveash* about the unique characteristics of juveniles do not apply. We must therefore reject Brown's argument that section 5-4.5-95(b) violates his due process rights.

¶ 31                                              Equal Protection

¶ 32    Finally, Brown argues that section 5-4.5-95(b) violates equal protection principles because it subjects similarly-situated defendants to different sentencing ranges. He invites us to consider two defendants who are born on the same date, have the same criminal record, and commit the same Class 1 felony on the same date, yet one is convicted before his twenty-first birthday while the other is convicted afterwards. These defendants would be subject to different sentencing ranges. Brown contends that this distinction is arbitrary and serves no rational legislative purpose.

¶ 33    Under the equal protection clauses of the United States and Illinois Constitutions (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2; see *Rudd v. Lake County Electoral Board*, 2016 IL App (2d) 160649, ¶ 13 (same standards are applied under both state and federal equal protections clauses)), the State must treat "similarly situated" individuals in a similar manner, rather than "lay[ing] an unequal hand on those who have committed intrinsically the same quality of offense." (Internal quotation marks omitted.) *People v. Reed*, 148 Ill. 2d 1, 7 (1992); see also *People v. J.F.*, 2014 IL App (1st) 123579, ¶ 14. Because classification based on age is not a suspect classification, we apply the rational basis test, under which we will uphold the

statute as long as it bears a rational relationship to a legitimate state goal. *Williams*, 358 Ill. App. 3d at 366 (citing *Reed*, 148 Ill. 2d at 7-8).

¶ 34 As with the previous issue, if there were no precedent on this issue, we would be inclined to agree with Brown. Brown is similarly situated to an individual who was born on the same day and committed the same crime on the same date but, by happenstance, was convicted before his twenty-first birthday, thus escaping mandatory Class X sentencing. But under the reasoning of *Griffin*, 92 Ill. 2d at 50, and *Fiveash*, 2015 IL 117669, ¶ 45, we cannot say that Brown has met his burden to establish an equal protection violation. As noted, the Class X recidivism provision is no more arbitrary than the legislative scheme upheld in *Griffin*, where the court specifically rejected respondent's arbitrariness argument, or the one upheld in *Fiveash*, where the court rejected defendant's due process argument under the rational basis test.

¶ 35 Finally, Brown argues, and the State agrees, that his mittimus should be corrected to accurately reflect the name of his conviction. Brown was convicted of possession of heroin with intent to deliver under section 401(c)(1) of the Illinois Controlled Substances Act (720 ILCS 570/401(c)(1) (West 2012)). The mittimus erroneously reflects a conviction for "MFG/DEL," referring to manufacturing and delivery of narcotics. Therefore, we direct the clerk of the circuit court to issue a corrected mittimus to reflect that Brown was convicted of possession of more than 1 but less than 15 grams of a controlled substance (heroin) with intent to deliver. *People v. Magee*, 374 Ill. App. 3d 1024, 1035-36 (2007) (remand unnecessary to correct mittimus because appellate court has authority to order clerk to make the necessary correction).

¶ 36 CONCLUSION

¶ 37 The Class X recidivist provision is of questionable legislative efficacy, insofar as it applies to defendants such as Brown, who commit offenses before the age of 21 but turn 21 before their conviction. Such defendants are essentially punished for the passage of time, caused by factors outside their control that are unrelated to either their culpability or capacity for rehabilitation. Nevertheless, based on controlling precedent from our supreme court, the statute is not an *ex post facto* law, nor does it violate the due process and equal protection guarantees of the United States and Illinois Constitutions. Accordingly, we affirm Brown's sentence and direct the clerk of the circuit court to correct the mittimus to accurately reflect the offense for which he was convicted.

¶ 38 Affirmed; mittimus corrected.